**CONDE NAST PUBLICATIONS, Inc. v.
VOGUE SCHOOL OF FASHION
MODELLING, Inc. et al.**

United States District Court
S. D. New York.

May 28, 1952.

De Witt, Van Aken & Nast, New York City (C. Coudert Nast, New York City, of counsel), for plaintiff.

Maurice R. Whitebook, New York City, for defendants.

RYAN, District Judge.

In this suit Conde Nast Publications, Inc., a New York corporation, seeks to enjoin the continued infringement and unfair use of its trade-name Vogue in connection with the operation by the defendants of the "Vogue School of Fashion Modelling, Inc.", also a New York corporation. In seven other counts, it seeks an injunction and money judgment under Sec. 101(b), 17 U.S.C.A., for infringement by defendants of seven separate copyrights owned by plaintiff.

The first count embraces three separate claims: one arising out of the alleged infringement of the registered trademark Vogue; the second, out of the alleged infringement of the common law trademark Vogue; and the third out of the alleged unlawful appropriation by defendants of plaintiff's name and good will. Since the first claim is based on the Lanham Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq., jurisdiction attaches "without regard to the amount in controversy or * * * lack of diversity of the citizenship of the parties." 15 U.S.C.A. § 1121. This jurisdiction extends to the related unfair competition claims, Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272, and as to these we need not determine which law applies since federal and New York law is the same. Dad's Root Beer Co. v. Doc's Beverages, 2 Cir., 1951, 193 F.2d 77.

Plaintiff and its predecessors have been since 1892 continually engaged in the publication of fashion magazines. The name Vogue was first registered in 1893 by one of plaintiff's predecessors—the Fashion Company, as the title of their magazine. It was re-registered in 1908 by the Vogue Company, which succeeded to the business of the Fashion Company. At that time, the Vogue Company also obtained registration of the name Vogue for use on other publications, not here involved. In 1922, the plaintiff corporation was organized and in the following year it acquired by assignment and purchase all the assets and good will of the Vogue Company, including the right to the use of the registered trade name Vogue. Plaintiff subsequently renewed registration of the name Vogue for use on its publications. In 1948, it again registered the name Vogue for this use on the principal register of the Lanham Act.

In 1936, plaintiff combined with the Vogue magazine another of its publications formerly issued under the name Vanity Fair. It then registered an additional trademark for use on this magazine— Vogue, Incorporating Vanity Fair. At present plaintiff's magazine Vogue is published under the name Vogue Incorporating Vanity Fair. As the record now stands plaintiff owns two registered marks—Vogue and Vogue Incorporating Vanity Fair.

Since its first publication in 1892, the Vogue magazine has been devoted to reporting and portraying women's fashions in clothing, cosmetics, jewelry and accessories. Vogue's prestige and high standing as an authority in the field of fashions

328

and fashion publications since 1919 is not disputed. The plaintiff also publishes a British edition and a French edition of Vogue, as well as the Vogue Knitting Book, Vogue Dressmaking Book and Vogue Pattern Book; and another fashion magazine Glamour. It also manufactures and sells Vogue paper dress patterns.

Vogue has become an important medium for the advertising of merchandise of manufacturers and retailers of women's wear. As part of its merchandising service, it supplies these merchants with countercards and tags bearing the phrases "As Seen in Vogue" and "Vogue Says", and "blow-ups" or enlargements of its covers. All of these are used in promoting the sales of their advertisers' products.

Vogue also includes in its issues a list of schools and camps under the title of School and Camp Directory. It maintains the Vogue School Bureau to advise and consult with parents concerning the advertised schools. But, apart from this service, plaintiff has no association with nor is it in any way engaged in the conduct of these schools.

The principal feature of the magazine is the portraying of current and future fashions, largely by the photographs of living models. Plaintiff maintains its own photographic studio where models are photographed under the direction and supervision of the magazine's fashion editors. Although plaintiff does not employ a staff of models, but hires them through modeling agencies, those whose pictures appear regularly in plaintiff's magazine are known to the trade as "Vogue models." However, plaintiff neither trains nor schools them to become models; it has no license to conduct such a school nor does it contemplate obtaining one.

Special emphasis is placed by Vogue on its covers which are chosen for their beauty and timeliness; eighty percent of them are colored photographs of attractive and strikingly attired live models. The covers play a vital part in pointing up the general character of the magazine and in highlighting the particular fashion trend for the season emphasized in each issue. Much money, artistic talent and imagination is devoted

to the preparation of these covers to attract reader attention and to promote circulation. There are twenty issues of Vogue a year; each is copyrighted. Copyrights are also secured on each issue of Glamour and its other publications.

Plaintiff has over a period of years exploited the name Vogue and it has become a valuable property right.

Defendant "Vogue School of Fashion Modelling" is a trade school licensed by the New York State Department of Education to conduct courses in fashion and photographic modeling and "self-improvement" (charm) courses. It does not operate a photography studio and has never published a magazine. It maintains with its school and employment or placement service for those who have been its students.

Defendant, Miss Stone, had at one time been a professional fashion model. She and Miss Fannie Brown Moore incorporated the defendant school in November, 1946. Miss Stone has always been its director. They were equal and sole stockholders until July 1948, when with the purchase of Miss Moore's stock, Miss Stone became and has continued as the sole stockholder, president and director of the school.

The defendants to promote and advertise the school print and issue to prospective students and interested applicants a booklet describing the work of the school and its personnel. This literature is mailed out in reply to inquiries and a supply is kept about the school for distribution to the public. The logotype used on defendants' promotional literature and on letterheads and envelopes is identical to that which was used, until recently, by plaintiff on the masthead of Vogue. The name "Vogue" appears in print enlarged far out of proportion to the balance of the corporate name of the school. Below the word "Vogue", the phrase "School of Fashion Modelling" appears in script letters of a considerably smaller size. The metal plaque on the outside of the building where the school is located contains the same type lettering, both as to form and size.

The defendants also used on their booklets, and building signs or cards to indicate

the location of the school, the capital letter "V" with the figure of a woman in modern dress carrying a hat box. This was a crude imitation of an old emblem which had originated with "The Vogue Company" and had been registered by plaintiff and its predecessors since January 1912. The plaintiff's emblem was known in the trade as the "V-girl". Although the registration of it was renewed as late as 1951, it has not been used by plaintiff in recent years. Plaintiff's "V-girl" mark shows the capital letter "V" with the figure of a woman dressed in colonial costume in the center of the letter. Although the figure depicted by the defendants is different, the combination of the capital letter "V" and the figure was selected by the defendants with the clear purpose of intimating the plaintiff's emblem.

Throughout the text of the brochures the school is repeatedly referred to as "Vogue", unaccompanied by any further description or qualification; and the school's president is referred to as "Vogue's" President. The summary of Miss Stone's background in the brochure contains the statement that she had been a "member of Vogue Magazine's London staff." This was not the fact; Miss Stone was never in the employ of or associated with plaintiff or its magazines in any capacity whatsoever. The first issue of this brochure numbering 500 copies was prepared by an advertising agency at the personal direction of Miss Stone and from information supplied by her. It was she who knowingly made this false statement. The second printing numbering 2,000 copies contained some new material and some changes in matter and in the photographs of the school faculty, but the false statement concerning Miss Stone was republished until 1948.

The front cover of a new catalog printed in 1948 retained the old format and "Vogue" alone was repeatedly used throughout the text. The misstatement of Miss Stone's association with the magazine was then omitted. However, on the back cover of the catalog were photographic reproductions of several magazine covers; among them, two from plaintiff's copyrighted magazines—the April 15, 1948 issue of Vogue and the May, 1948 issue of Glamour. This was entirely Miss Stone's idea. At first, it had been her intention to use these. reproductions on the front cover but she was dissuaded from this by the advertising agency which assisted in its preparation. 5,000 copies were printed of this catalog. A subsequent catalog was printed and again re-printed (10,000 copies in toto) and although the text remained the same in these subsequent issues, the back cover now displayed, among other magazine covers, three 1948-9 reproductions of Vogue covers and two of Glamour magazine.

Another promotional device employed by defendants was a printed page of photographs of graduates of the school with expressions of their gratitude to the school and statements attributing their success to training at "Vogue". This was captioned "Tribute to Vogue"; nowhere in its title or in the quoted tributes is the school referred to other than as "Vogue".

Plaintiff's business manager, Ruston, testified that the existence of defendant's school was first brought to his attention in 1947, when inquiry was made of him as to the eligibility of the defendant to advertise in the magazine. Ruston decided that the defendant would not be acceptable as an advertiser; he then informed plaintiff's counsel of the school. He heard nothing further until 1948, when he was approached by an advertising promoter of the school with a proposition for working up an advertising "tie-up" between the magazine and the school. This was rejected by Ruston and he communicated with Miss Stone requesting her to come to his office to discuss the use of the mark "Vogue" by the school. The testimony is conflicting as to whether at that time he told Miss Stone of plaintiff's objections to the use of the name "Vogue". This call was followed by three letters to her from plaintiff's attorneys— one in 1948 and two early in 1949 requesting that she call to discuss the matter with plaintiff's attorneys. A meeting was finally had in April, 1949 and a change in the name of the school requested. This was not complied with and in July, 1949, plain-

tiff's attorneys wrote advising Miss Stone that unless she discontinued the use of the name "Vogue" plaintiff would file suit. She denies ever having seen this letter, but she did testify that the letter was probably received by her office, while she was away for the summer. She was served with process in October, 1950.

Since the commencement of this suit, defendant has in the brochure and on stationery and signs in the school office and in the hall leading to it inserted a disclaimer of connection with Vogue magazine. The metal plaque on the outside of the building where the school is located remains unchanged; it still contains the "V-girl". A disclaimer of connection with Vogue magazine is also made in the school's radio advertising. This announcement is made at the end of the 15-minute radio program defendants sponsor, when the address and details of the school are given. A new brochure has substituted the figure of a model for the magazine cover reproductions formerly appearing on the back cover; the "V-girl" in the word Vogue had not been used on its literature since 1948.

Plaintiff introduced some evidence to show that on the part of some of the public there was confusion created and a tendency to connect the school with Vogue magazine.

There is no claim by plaintiff that the use of the name "Vogue" in the conduct of the school, has brought discredit on plaintiff's name or caused it any financial damage. The parties are not in competition and consequently there is no claim that defendants diverted business which would normally have come to plaintiff. The evidence establishes that defendants' course of conduct and choice of the name "Vogue" in its business was had for the purpose of creating in the mind of the public a belief that there was some connection between it and plaintiff.

■ The plaintiff urges that the validity of its registered trade mark "Vogue" may not now be questioned as the title of a magazine in view of its registration on the principal register under the Lanham Act of 1946, Public Law 489, 79th Congress, 15 U.S.C.A. § 1051 et seq. It is argued that since the mark "Vogue", even if it be held to be descriptive, had become distinctive of plaintiff's goods in commerce, prior to registration under section 2(f) of the Lanham Act, 15 U.S.C.A. § 1052, the validity of the registration is not subject to question on any ground.

Section 2(f) reads in part:

"Except as expressly excluded in subsections (a), (b), (c), and (d) of this section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce."

The only provision in the Lanham Act providing for "incontestability" of a registered trade mark is found in Section 15 of the Act, 15 U.S.C.A. § 1065. It requires, inter alia, that the mark be on the principal register for at least five years and that an affidavit of at least five years continuous use be filed with the Patent Office. The five years registration refers to a period commencing from the date of registration under the Act. The Act became effective on July 5, 1947; the registration by plaintiff under the Lanham Act was effected on November 16, 1948 (Ex. 30). The mark may not claim the benefits of the "incontestability" clause until November 16, 1935. It seems that until then the plaintiff's claim to a statutory mark is still subject to the objection that it is merely descriptive of the product, its qualities or character. Cf. National Nu Grape Company v. Guest, 10 Cir., 1947, 164 F.2d 874.

■ Although it seems that plaintiff has not yet acquired an exclusive right to the use of the mark "Vogue" through registration either under the Lanham Act or any prior statutory enactment, it is not necessary to so decide. Such a conclusion would not mean that the plaintiff has acquired no common law right through usage.

■■ One may not by adopting a common word as a trade mark acquire through usage the exclusive right to the use of what is public property. However, words in the public domain may, through continued

application to a specific product or in a specific field of merchandising or commercial activity, acquire an association with the user and the product or field so as to create in the public mind a syndetic meaning for the word. "Vogue" is a word of common usage. It has a definite and established meaning. "Vogue" connotes that which is in fashion at a particular time; it refers to the general trend or current mode of fashion. We find that the word "Vogue" has acquired a secondary meaning so that the mention of "Vogue" unaccompanied by further description brings to the mind of the public an immediate connotation of the plaintiff's publications. Though "Vogue" is a word of everyday speech the plaintiff has, through constant usage, created in the public mind an association between its publications and the wearing apparel and accessories worn by the American woman of descriminating and fashionable tastes, which are there reported, pictured, sponsored or recommended. In the world of fashion, plaintiff has acquired a common law right to its exclusive use. The extent and boundaries of that use covers the range of ordinary associations that is formed in the public mind; it includes fashion modeling and schools where fashion modeling is taught.

■ Of course, the plaintiff as the publisher of fashion or style magazines and the defendants as proprietors of a school for the training of fashion models are not in factual competition. No school for fashion modeling is operated by the plaintiff and the defendants are not publishers. " * * * (T)he wrong of the defendant consisted in imposing upon the plaintiff a risk that the defendant's goods would be associated by the public with the plaintiff * * *." Triangle Publications, Inc., v. Rohrlich, 2 Cir., 167 F.2d 969, 973.

■ We have had expert testimony by those in the merchandising and advertising field as to probability of confusion arising from the use of the mark "Vogue" by the defendants. But whether it has led to some confusion or not, it is plain that the use by the defendants does in fact lessen the distinctiveness of the mark "Vogue". Allowed to continue, the value of the mark will be impaired and its future will become dependent in part upon the activities and good faith of the defendants in the operation of their school. We read Triangle Publications, Inc., v. Rohrlich, 2 Cir., 1948, 167 F.2d 969 as expressly recognizing the plaintiff's right to relief. Since we have found plaintiff has a property right in the mark, it is entitled to have it protected by injunctive relief.

■ The plaintiff is entitled to claim protection upon this showing that the use of the word "Vogue" by the defendants is likely to cause confusion or mistake or to deceive the public. Injunctive relief must also be granted because of the evidence that the mark was used in violation of the ethical standards of fair dealing.

From a wide variety of available names appropriate for the school, the defendants not only chose "Vogue" but accompanied it with plaintiff's symbol of the "V-girl" and the word "Fashion"—the very field which one associates with plaintiff's magazines. That the selection of the name was in no way prompted by plaintiff's reputation and prestige, but chosen merely for its meaning of mode or style, is incredible. This is plain when we consider that Miss Stone's background in modeling made her familiar with and appreciate of the importance of the name in the field of fashion and the benefit to be derived from an association with it. That it was defendants' purpose to benefit from the use of the mark and good will plaintiff had so widely developed was made manifest when they adopted the format and logotype used by the magazine, repeatedly referred to the school as "Vogue" and reproduced on their brochures covers of plaintiff's magazines. This impression of association the defendants sought to further strengthen by the false statement of Miss Stone's employment on the British staff of the plaintiff's magazine.

■ We find that the defendants engaged in unfair practices to confuse the public and create an impression, if not of actual connection with the magazine, at least of sponsorship or approval by it of defendants' school. This was a wanton

appropriation of plaintiff's name and good will; that they benefited from this is presumed; that plaintiff suffered no monetary damage is immaterial.

"This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. * * * unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful." Yale Electric Corp. v. Robertson, 2 Cir., 1928, 26 F.2d 972, 974.

■ It would be inequitable to permit defendants to continue the use of "Vogue" in any manner in their business. We have found that besides adopting the mark "Vogue" they employed other unfair means of conveying the idea of identification between them and plaintiff's magazine. These acts were had from the inception and the formation of the school; they were continued during its operation and accompanied its development. Defendants may not now continue to enjoy the benefits which these unfair acts have made possible. Cf. Esquire, Inc., v. Esquire Bar, D.C., 37 F.Supp. 875. Nor may the disparity in the size of the respective business be considered, for "one cannot ride upon another's coattails in the inevitable process of becoming bigger," or "grow through use of another's congenial symbol". LaTouraine Coffee Co. v. Lorraine Coffee Co., Inc., 2 Cir., 157 F.2d 115, 119.

When the facts of this suit are analyzed, we have far more than an instance where a defendant has attempted to secure a "free ride" upon a mark which has been nourished and developed by another. The defendants deliberately and knowingly infringed on plaintiff's mark and persistently, falsely represented themselves as being sponsored by or associated with the plaintiff; all this was done with the plain and obvious purpose to confuse the public.

■ Plaintiff is entitled to a permanent injunction enjoining the use of the mark "Vogue" by defendants in the title and name of the school, on stationery, broch-

ures and advertising matter, and restraining defendants from representing directly or indirectly by any means whatsoever, any association with, sponsorship or approval by plaintiff or its magazines.

■ We now consider the claim of copyright infringement of the covers of plaintiff's magazines Vogue and Glamour by the photographic reproduction by defendants on their brochures. That the contents of these magazines were copyrighted and that the covers were reproduced without permission for a commercial purpose is not disputed. To constitute infringement, however, we must find that the covers were protected by copyright as an integral part of the magazine and that defendants' copying was so unreasonable as not to fall within the permissible limits of fair use.

■ The fact that each cover bore separate copyright notice and that the notice on the title page of the magazine claimed protection for "text and illustrations" would not entitle the covers to protection if, in fact, they were not proper subjects of copyright. We think, however, that they were.

■ We have found that plaintiff devoted much money and effort to the preparation of each cover as one of the most significant features of its magazines. The result was an artistic composition, demonstrating originality and good taste; distinctive of plaintiff's magazine and the product of its labor. As such it would be entitled to copyright protection as much as are "the lines of the poet or the historian's periods." Baker v. Selden, 101 U.S. 99, 25 L.Ed. 841, 842. See also, National Cloak & Suit Co. v. Kaufman, C.C., 189 F. 215. Moreover, as a photograph which through arrangement of light, color and grouping presents an attractive and pleasing picture it would be entitled to separate copyright under Sec. 5 of the Copyright Act.

■ We have found that the cover of each magazine was used to indicate the particular feature emphasized in that issue. Such a relation between the subject matter of the cover and the text of the magazine

makes the cover an integral part of the magazine falling within the protection of the copyright of the latter as a "copyrightable component part" of it. Sec. 3 of the Copyright Act.

We do not read Fawcett Publications, Inc., v. Elliot Pub. Co., D.C., 46 F.Supp. 717, 718, as holding to the contrary. There the infringement claimed was on the title of a comics magazine. In denying summary judgment for copyright infringement the court gave as its reasons, the fact that "the cover ordinarily has no literary copyrightable matter and, when an individual design is embodied in it, its relation to the copyrighted literary content is remote and its authorship and ownership do not prima facie appear". Here, we have present the very requisites which in that case the court found missing.

Although the defendants in their use of plaintiff's copyrighted material were not attempting to advance it as the product of their own genius and effort, or to offer it for sale, and their use did not result in prejudice or diminution of plaintiff's profits, we find that the copying was not the reasonable use which in the interests of progress the law permits under the "fair use" theory.

 The extent of the copying was substantial; although the entire cover was not reproduced, its very essence—the picture of the model—was, as was also the title. In the first brochure, there were two reproductions of plaintiff's covers, and in the second, five reproductions. At the time the covers were reproduced, in addition to their artistic value, they had the element of timeliness, for the copying took place shortly after these issues had appeared. Although the defendants may have lacked the intention to deliberately infringe, the purpose of the copying was to promote their business with the aid of an attractive catalogue and the prestige of plaintiff's magazines. This is exactly the prohibition which limits the privilege granted by the "fair use" theory, that "no one is entitled to save time, trouble and expense by availing himself of another's copyrighted work for the sake of making an unearned profit." Ball on Copyright

and Literary Property (1944), Secs. 125, 126.

Plaintiff is entitled to an injunction permanently restraining defendants from any further copying, distribution or use in any manner of plaintiff's seven copyrighted covers.

In the absence of proof of any actual damage as a result of defendants' infringement, of any wilful intent on their part to infringe and of any sale for profit of plaintiff's copyrighted work, statutory damages in the sum of $250 are awarded to plaintiff on each of the seven copyright infringements.

The judgment awarding the above damages and enjoining the defendants from any further use of the name Vogue or of the copyrighted covers is directed against the defendants jointly and severally. We have found that Miss Stone as director, and sole stockholder of the defendant corporation not only authorized but personally participated in the acts which constituted trademark infringement, unfair competition and copyright infringement. Since she acted in her individual capacity and for her personal gain, she is individually liable. Wells v. American Bureau of Engineering, 7 Cir., 285 F. 371.

Appropriate judgment may be settled on notice.