**W.R. GRACE & CO., Plaintiff,**

v.

**UNION CARBIDE CORPORATION, Defendant.**

**Nos. 78 Civ. 1074 (MJL), 82 Civ. 1859 (MJL).**

United States District Court, S.D. New York.

Dec. 2, 1983.

As Amended Jan. 13, 1984.

Kevin T. O'Reilly, New York City by George T. Mobille, Edward M. Prince, Cushman, Darby & Cushman, Washington, D.C., for plaintiff.

Bert A. Collison of Nims, Howes, Collison & Isner by Kenneth R. Umans, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

This is an action arising under, 15 U.S.C. § 1051, *et seq.*, wherein plaintiff, W.R. Grace & Co., ("Grace") alleges, *inter alia*, infringement of its federally registered trademark "Barrier Bag".[1] Defendant, Union Carbide Corporation ("Carbide"), counterclaims and seeks *inter alia*, cancellation of plaintiff's said registration. This Court has jurisdiction under 28 U.S.C. § 1338(a), 28 U.S.C. §§ 2201, and 2202, and 15 U.S.C. §§ 1119 and 1121.

Plaintiff, Grace is a Connecticut corporation, having its principal place of business in New York, New York. Its Cryovac Division ("Cryovac") is headquartered at Duncan, South Carolina and, *inter alia*, manufactures and markets various products used in the packaging of foodstuffs.

Defendant, Carbide is a New York corporation. Its Films-Packaging division is headquartered in Chicago, Illinois and, like Cryovac, manufactures and markets various products used in the packaging of foodstuffs.

## BACKGROUND

As late as the early 1960's fresh meats were delivered to retailers in the form of swinging carcasses. In the middle 1960's the fresh meat industry began to break these carcasses into wholesale and retail cuts which were called "primals" and "sub-primals". The sub-primals weighed anywhere from 7 to 40 pounds. Competition developed between Cryovac, Carbide and others to supply packaging for this new method of marketing.

Commencing in about 1950, Cryovac pioneered the development of a unique plastic bag to package turkeys so as to provide a longer and more uniform storage life of that product.[2] These so-called vacuum shrink bags were later augmented by other vacuum packaging materials capable of being used with meats and cheeses as well as with poultry. They were marketed by Cryovac under various trademarks such as S–BAG, L–BAG, SUPER–L BAG, and the like.

In mid 1960, Carbide's Films-Packaging Division introduced its own version of bags which competed with Cryovac's vacuum packaging material. These products were generally marketed under the trademark "Perflex".

On September 17, 1973, Grace filed an application with the United States Patent and Trademark Office to register as a trademark "Barrier Bag." Plaintiff claimed the date of first use to have been November, 1971, and the date of first use in interstate commerce to have been as early as July 27, 1973. Registration was granted on the Principal Register on July 30, 1974 for "heat shrinkable, thermoplastic bags for packaging foodstuffs such as meat, poultry and dairy products."[3]

In 1974 Carbide began to advertise its Perflex 62 thermoplastic bags as "Oxygen Barrier Bags".[4] Plaintiff, in early 1975 objected to defendant's use of the words "Oxygen Barrier Bag" and defendant, on April 26, 1976 filed a petition in the United

---

1. Plaintiff also seeks a declaratory judgment confirming its registration.

2. Turkeys were placed in the plastic bags, and the bags were then vacuum sealed and heat shrunk to a snug fit. The resulting package is air-tight and moisture-proof protecting the contents from oxidation, dehydration and contamination during storage.

3. Plaintiff's Exh. 9a.

4. Defendant's Exhs. k–1, k–2; Trial Transcript (hereafter Tr.) 545, 592. TTAB decision at 28–29.

States Patent and Trademark Office to cancel plaintiff's registration.

During the discovery period in the cancellation proceeding, plaintiff instituted an action for trademark infringement in this Court and, at the same time, moved to stay the cancellation proceeding. The stay was granted by the Trademark Trial and Appeal Board (hereinafter "TTAB").

In answer to the Complaint, defendant Carbide pleaded certain defenses and counterclaims alleging, essentially, the same grounds for cancelling plaintiff's registration as it did in the cancellation proceeding. Defendant further alleged that plaintiff's failure to inform the Patent and Trademark Office of its prior descriptive use of "barrier bag" constituted a fraud upon said office.

The parties stipulated that discovery[5] taken in the cancellation proceeding could be used in the District Court action. Trial was held before this Court from April 14 through April 17, 1980.

Carbide claimed that "barrier bag" is the common descriptive (generic) name for a bag possessing "barrier characteristics" and made from "barrier materials" such as "barrier film". Carbide argued that Grace by obtaining a registration for this generic term, sought to deny its use by Carbide and others to describe their own products which are identical to the products sold by Grace, thus giving Grace an unfair commercial advantage.

After testimony had been taken, this Court, being of the opinion that it would be aided by a determination of the cancellation proceeding by the TTAB, ordered (with the consent of the then Chairman of the Board) that proceedings before the Board be resumed and that the transcript of the trial in this Court, together with all trial exhibits be transmitted to the Board as evidence to be considered by the Board in determining

the cancellation proceeding. The civil action was suspended pending a final decision in the cancellation proceeding. Proceedings before the TTAB were resumed.

The Board, in a forty-four page decision held that the term "barrier bag" was commonly descriptive (generic) and unanimously granted Carbide's Petition to cancel Grace's Federal Registration No. 939,345 for the said term. The Board found:

> Due consideration of the evidence presented in the instant case leads us inescapably to the conclusion that the term "BARRIER BAG" is a common descriptive, or generic, name of bags which, like the bags sold by respondent under the term, are made of barrier materials and hence have barrier properties or characteristics. *Union Carbide Corporation v. W.R. Grace & Co.*, 213 USPQ 400, 411 (TTAB 1982).

Plaintiff, Grace, filed 82 Civ. 1859, appealing the Board's decision to this Court. By a joint letter dated April 12, the parties agreed that the two cases before this Court be consolidated. They further agreed that the briefs and arguments to be filed would encompass and address all matters raised in Civil Action No. 78 Civ. 1074 as well as any subsequent issues raised by Civil Action No. 82 Civ. 1859 and that this Court's decision would ultimately determine both actions.

## DISCUSSION

The pertinent evidence presented by both parties is exhaustively set out in the opinion of the Board and need not be repeated herein, except where necessary to address the issues raised.

█ The decision of the TTAB to cancel Grace's trademark registration for "Barrier Bag" is subject to appellate review by this Court.[6] The issue of infringe-

---

5. The parties deposed 26 individuals, and in addition submitted numerous exhibits.

6. The decision of a specialized agency such as the TTAB, even though not binding upon this Court, should be treated with respectful consideration, *D.M. & Antique Import Corp. v. Royal*

*Saxe Corp.*, 311 F.Supp. 1261, 1274 (S.D.N.Y. 1970) and where, as in the instant case, it is based upon a mixed question of fact and law, the decision should not be reversed unless this Court finds clear error. *Sarah Coventry, Inc. v.*

ment pursuant to 15 U.S.C. § 1501 *et seq.* is within the original jurisdiction of this Court.[7] Plaintiff makes the following arguments:

## CONTENTION I

*Grace Argues That The Meaning Of The Mark Must Be Determined From The Point Of View Of The Consumer.*

Grace claims that the TTAB was in error since it relied upon evidence of experts in the field, not consumers, in determining that the mark was descriptive.

Grace argues that the test of descriptiveness of the mark must be determined from the standpoint of the average prospective purchaser; therefore, evidence produced by Carbide, pertaining to the term "Barrier Bag" as used in the commercial packaging trade was totally irrelevant.[8] The critical question, Grace contends, is whether the mark is descriptive to the ultimate consumer, not what the designation means to those in the industry. Grace cites as authority *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1369, (10th Cir.1977) *cert. denied*, 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978); *Blisscraft of Hollywood v. United Plastics Co.*, 294 F.2d 694, 698–99 (2d Cir.1961). Carbide, in its response, does not dispute Grace's statement of the law, but contends that the

record discloses the testimony of many "consumer" witnesses.[9]

▪ The Court finds that the term consumer, as used in the context of this case, is not limited to the ultimate purchaser from the retailer but rather refers to a consumer, at any level in the chain of distribution, who purchases the product for its own use, *i.e.*, the meat wholesaler who buys wholesale quantities of the bags for packaging its meats which are then distributed to the retailer. The decision of the TTAB explicitly referred to evidence from "this consumer" for example:

Charles L. Overstreet, president of Peppertree Beef Company, formerly employed by Iowa Beef Processors, the largest meat processor in the world, testified that "Barrier Bag" describes a function or use of the bag (TTAB Op. at 37–38); Arthur Berlinger, president of Circle Beef Company, testified that he has used both Cryovac's and Carbide's bags and that he considers both products to be laminated bags which he refers to as "Barrier Bags" (TTAB Op. at 38); Phillip Bancraert, employed since 1955 by a succession of meat packers and grocery store chains, now with Kentucky Fried Chicken, testified that he first heard the term "Barrier Bag" in 1955 or 1956 in reference to heat shrinkable bags produced by Cryovac and Dow Chemical Company (TTAB Op. at 21); Robert H. Biddle who

---

T. *Sardelli & Sons, Inc.*, 526 F.2d 20, 22, (1st Cir.1975), F.R.C.P. 52(a).

**7.** 15 U.S.C. § 1119 provides that:
[i]n any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore cancelled registrations, and otherwise rectify the register with respect to the registrations of any party to the action.
15 U.S.C. § 1121 provides that:
[t]he district courts of the United States shall have original jurisdiction and the Courts of Appeal of the United States shall have appellate jurisdiction, of all actions arising under this chapter.
It is noted that in an infringement action based upon a registered trademark, the defendant bears the burden of overcoming the presumption that the mark is not generic. When the

mark is not registered, there is no presumption of validity and the burden is upon plaintiff to prove valid trademark use. *Reese Publishing Company Inc. v. Hampton International Communications Inc. etc.*, 620 F.2d 7 (2d Cir.1980). Cancellation of plaintiff's mark thus shifts the burden in the infringement action from defendant to plaintiff Grace.

**8.** Reply Brief of Grace at 6.

**9.** The purchasers of the products in question herein are food packagers, not the ordinary consumer. Such purchasers generally buy such products in large amounts and are generally well acquainted with the companies from whom they purchase their barrier bags. This is not a case where a few bars of soap or a few shirts are purchased quickly or on impulse; rather, each purchase involves a commitment of many thousands of dollars. Reply Brief of Carbide at 61.

worked for Kroger Company (meat wholesalers) testified that Kroger referred to the bags used in packaging fresh red meats as "Vacuum Barrier Bags" which described the function of the bag. Exhibits of record are copies of Kroger invoices showing use of the term "Barrier Bag" on purchase orders from both Carbide and Cryovac (TTAB Op. at 20–21); Cryovac, in introducing its product to the meat packaging industry in 1971 in a trade publication described its product: "The barrier bag has unequaled toughness for carrying beef ..." (TTAB Op. at 23).[10]

The record evidence cited *supra*, clearly · indicates that the TTAB considered the testimony of "consumers" of the product i.e., purchasers of packaging for use in preparing products for wholesale distribution.

## CONTENTION II

*Grace Argues That Evidence of Use of the Term "Barrier Bag" in the Military Field Since World War II as a Common Descriptive Name for Plastic Bags used in Packaging Military Hardware Is of No Probative Value Since the Military use was in a Field Unrelated to the Fresh Red Meat Industry.*

■ Grace claims that since the term "Barrier Bag" was never used in the fresh red meat field prior to Grace's use, the TTAB was in error in considering other uses of the term in commerce. This argument impermissibly seeks to narrow the relevant field of inquiry. It overlooks the fact that a court and the TTAB must consider the actual usage of the term, as it is commonly understood by consumers in the consuming market. That market, in the instant case, is the wholesale packaging industry.

For example, defendant's Exhibits A–1 through A–5 illustrate the use by the military of the term "barrier bag" from approximately 1944 through 1967 in connection with packaging; Exhibit C–1 shows use of the term barrier bag in connection with the packaging of coffee in 1962 (10 years prior to Grace's first use) and Exhibits C–2 through C–8 show continuing third party uses of barrier bag in trade literature from 1970 through 1978.

Defendant's Exhibit C–2 is an article from *Modern Packaging*, dated January 1970, almost three years before plaintiff's claimed use of barrier bag in interstate commerce. One paragraph in this article is illustrative of the trade's common use of the terms "barrier bag" and "barrier material" in the packaging of meats, a field which plaintiff relies upon exclusively for its claimed trademark use.[11] Further, it describes the purposes and uses of a barrier bag as follows:

> If central prepackaging does go the fresh meat route, there are several packaging approaches. One is controlled-atmosphere packaging, usually with $CO_2$ or nitrogen. These gases may be contained within a *high barrier bag* surrounding one or more retail-size cuts of meat in familiar oxygen-permeable film. The outer wrap would preserve the meat until placed on display, when the *barrier material* would be stripped away so the meat would regain its bloom. Union Camp, Wayne, N.J., is investigating one such procedure and claims a four to six-week shelf life. [Emphasis Added] (p. 63)

Grace does not claim to have used the term "barrier bag" prior to November 1971, and does not claim to have made any interstate use of these words until July 27, 1973. This Court finds as did the TTAB, that the words "barrier" and "barrier bag"

---

10. There are many other exhibits and deposition testimony in the record concerning consumers identification of "Barrier Bag" as the name of a product *i.e.* deposition of Vignieri, President of Kenosha Beef, Vignieri Dep. pp. 53–55, Pet.Ex. G–42, G–43; Barol Dep.; Robinson Dep.; Best Dep.; Briedinstein Dep.; Def.Exs. A–1, A–2, A–3, A–4, A–5, C–1, F–1, F–47, I–1, I–9, I–11, J–28, L–1, L–40.

11. However, this Court notes that Grace in answer to Interrogatory I of Defendant's Fourth Set of Interrogatories states that products now packaged in bags sold by Grace under the Barrier Bag trademark are: fresh red meat, smoked, cured and processed meat, fresh and processed poultry, fish, and retail and bulk cheese.

were used in the packaging industry to describe bags with barrier functions continuously for at least twenty-five years prior to Grace's alleged use.

Section 14(c) of the 1946 Trademark Act, 15 U.S.C. 1064(c) provides for the cancellation of a Federal trademark registration "at any time if the registered mark becomes the common descriptive name of an article of substance". The TTAB has held that the words "common descriptive" constitute "a common noun for a product or service" and that said words are synonymous with the word generic. *Primal Feeling Center of New England, Inc. v. Janov*, 201 USPQ 44, 57 (TTAB 1978). See, *Abercrombie & Fitch Company v. Hunting World, Incorporated*, 537 F.2d 4, 9 (2d Cir.1976).

■ Grace cannot insulate its mark from the generic category by limiting its application to packaging for fresh red meat for two reasons: (1) in applying for its registration it did not so limit the mark;[12] and (2) the term "barrier bag" in the packaging industry is descriptive of an article that has recognizable qualities, ingredients and characteristics.[13]

This Court finds that it was proper for the TTAB to survey prior use of the term "barrier bag" in the packaging industry in order to determine whether it was a generic term.

## CONTENTION III

*Grace Argues That the TTAB's Reliance on Record Evidence that Barrier Bag is a Common Descriptive Term is Not Credible.*

This claim has no merit in view of the discussion under Contentions I, II, IV, V, and VI herein.

## CONTENTION IV

*Grace Argues That The Finding That Grace Used the Term in a Descriptive Sense Is Error.*

■ During trial, plaintiff's witness, Kalousek, under examination by this Court, testified that many initial uses by Grace of the term "barrier bag" were not trademark usages. For example, Kalousek, in testifying about the use of barrier bag in Plaintiff's advertisement I–6 stated, (Tr. pp. 464–465):

THE COURT: There is no question that CRYOVAC R circle is a trademark use, right?

THE WITNESS: Right.

THE COURT: And right next to it is barrier bag with no R or TM and in small letters. From that you are telling me your opinion is what about trademark usage of barrier bag?

THE WITNESS: As I said, your honor, it's poor use of the product name.

THE COURT: I don't care if it's poor or not. I am talking about the exhibit as I have just read it into the record. Can any person knowledgeable in the field read that as meaning that barrier bag is trademark usage as CRYOVAC R circle is?

THE WITNESS: The answer would have to be no.

THE COURT: Back to Square I. Of the thirteen usages of the term barrier bag in Exhibit I–6, can you say with a reasonable degree of certainty that any of those usages is anything other than descriptive?

THE WITNESS: I cannot.

Defendant's Exhibits I–1, I–9 and I–11 also support a finding that Grace, in fact used

---

**12.** The registration was issued on July 30, 1974 for "heat shrinkable, thermoplastic bags for packaging foodstuffs such as meat, poultry and dairy products." See Footnote 11 *supra*.

**13.** The TTAB in its Opinion at pp. 12–13 stated:

\* \* \* \* \* \*

To begin with, the term "barrier" has a specific dictionary meaning in the packaging field, namely, "a flexible material that can be formed into a container preventing or limiting the entrance of moisture, retaining flavors

or oils, and otherwise protecting its contents." Further, petitioner's record shows that terms such as "barrier film", "barrier coatings", "barrier material", "barrier properties", "barrier characteristics", "oxygen barrier", "moisture barrier", "gas barrier", "excellent barrier", "barrier layer", etc., have been used descriptively in the food packaging field since well prior to respondent's claimed date of first use of the term "BARRIER BAG".

the term barrier bag in its generic sense. This Court finds that the TTAB did not commit error in making its finding of prior generic use of the mark by Grace.

## CONTENTION V

*Grace Argues that Although The Words Bag and Barrier Used Alone are Generic Terms, When Used Together the Mark is Suggestive, Not Descriptive.*

Although it is generally true that a mark must be read as a whole and not fragmented, 1 McCarthy, Trademarks and Unfair Competition § 11:10 at 364–366 (1973), when one considers the history of the composite mark "Barrier Bag" one is compelled to conclude that it is not suggestive [14] but describes a type of packaging. As plaintiff in *CES Publishing Corp. v. St. Regis Publications, Inc.*, 531 F.2d 11 (2d Cir.1975) could not prevent a competitor from using "consumer electronics" in the name of its magazine [15] because "consumer electronics" is a generic term describing consumer electronic products; so too Grace cannot appropriate to itself and deny to its competitors a name that is most descriptive of the packaging under consideration.[16]

This Court finds that Grace has not proven by clear and convincing evidence that "Barrier Bag" is a suggestive rather than a generic name.

## CONTENTION VI

*Grace Argues That Grace's Mark Acquired Secondary Meaning.*

Finally, Grace argues that the TTAB found that the term "Barrier Bag" was generic and also had acquired a "de facto" secondary meaning. The TTAB, after finding that the name "Barrier Bag" was generic held: [17]

> Notwithstanding the nature of the term "BARRIER BAG", we have no doubt that respondent has acquired a measure of de facto secondary meaning therein to the extent that some people associate the term with respondent due to the fact that respondent's Cryovac Division was the first and for a time, the only manufacturer to market bags of the particular type here involved and has held a dominant market position, with very extensive sales under the term "BARRIER BAG", over a period of years. However, as we indicated above, this de facto secondary meaning is not legally sufficient to support the continued existence of respondent's registration. What was said by the Court in *Weiss Noodle Company v. Golden Cracknel and Specialty Company, supra,* at page 414 [290 F.2d 845 at page 848, 48 C.C.P.A. 1004 at page 1008–09], is equally applicable here:

> "While it is always distressing to contemplate a situation in which money has been invested in a promotion in the mistaken belief that trademark rights of value are being created, merchants act at their peril in attempting, by advertising, to convert common names, which belong to the public, to their own exclusive use. Even though they succeed in the creation of de facto secondary meaning, due to lack of competition or other happen-

---

**14.** In order for a term to be suggestive, it requires imagination, thought and perception to reach a conclusion as to the nature of the goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods. *Abercrombie & Fitch, supra,* at 11.

**15.** Plaintiff in *CES Publishing Corp.* had registered the trademark "Consumer Electronics".

**16.** Plaintiff in its petition to amend its trademark application stated, "An examination of the Specimens will show that applicant's goods are in fact 'bags' rather than 'thermoplastic material'". (Emphasis added) Def.Ex. M–9.

*Webster's Third New International Dictionary,* 1968 defines "barrier" *inter alia,* as:
   (2) in packaging: a flexible material that can be formed into a container preventing or limiting the entrance of moisture, retaining flavors or oil, and otherwise protecting its contents.
   While dictionary definitions are not conclusive, courts have frequently relied, at least in part, on dictionary entries in determining whether or not a trademark is generic.

**17.** TTAB decision p. 42.

stance, the law respecting registration will not give it any effect. When the board said 'HA–LUSH–KA' could not acquire a secondary meaning it meant that no secondary meaning of legal significance could be acquired. It would perhaps be more realistic to say that the descriptive name of a product is unregistrable regardless of acquired secondary meaning."

Although the TTAB used the words *generic* and *descriptive* interchangeably at times in its opinion, the context of the opinion as a whole leaves little question in this Court's mind that the TTAB found the mark to be generic [18] in the technical trademark sense.

Although the Lanham Act does not explicitly say that a generic word cannot be validly registered, even if there is proof of secondary meaning, this is the necessary implication of the Act. As Judge Friendly explained in *CES Pub. Corp. v. St. Regis Publications, Inc.*, 531 F.2d 11, 13 (2d Cir. 1975).

> To allow trademark protection for generic terms, *i.e.*, names which describe the genus of goods being sold, even when these have become identified with the first user, would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are.

*Id.*

To the same effect is Footnote 2 of Chief Judge Feinberg's opinion in *Reese Publishing, supra* at p. 12:

> Appellant argues that evidence of secondary meaning would have been relevant to the issue whether its mark is generic because such evidence goes to the ultimate question of what the mark

means to the consumer. But the evidence as to secondary meaning proffered by appellant at most could have established "de facto secondary meaning" which cannot suffice to convert a generic term into a trademark. See, *e.g.*, *J. Kohnstam, Ltd. v. Louis Marx & Co.*, 280 F.2d 437, 440 (C.C.P.A.1960); 1 McCarthy, Trademarks and Unfair Competition §§ 12:14–15 at 430–34 (1973).

Thus the holding of the TTAB is fully supported by decisions in this Circuit.[19]

For all of the above reasons, this Court affirms the decision of the TTAB and finds that Grace has no common law trademark rights in the generic term barrier bag and that Grace's trademark Registration No. 989,345 was properly cancelled pursuant to Section 37 of the Trademark Act of 1946 (15 U.S.C. § 1119). This Court also finds that Grace has failed to sustain its burden of proof in Civil Action 78 Civ. 1074, alleging infringement of its mark and renders judgment in favor of the defendant Carbide.

This Court denies defendant's application to recover costs, disbursements, expenses of both actions and attorneys fees.

It Is So Ordered.

---

**18.** The TTAB specifically noted in its decision that Grace's mark was not held to be descriptive when it was registered and was issued in the Principal Register "without resort to Section 2(f) of the Trademark Act of 1946." TTAB Op. page 2 fn. 1.

**19.** *See also CES Pub. Corp., supra.* Wherein the Second Circuit stated:

While the Court was thus correct in denying plaintiff's application for a temporary injunction because of the generic nature of its mark, it was in error in thinking that by proving secondary meaning plaintiff might save the day. This resulted from the common mistake of failing to distinguish between "merely descriptive" terms which can be rescued as trademarks by such proof and generic terms which cannot be. *Id.* at 15.