Justice BREYER, dissenting.
What is Booking.com? To answer this question, one need only consult the term itself. Respondent provides an online booking service. The company's name informs the consumer of the basic nature of its business and nothing more. Therein lies the root of my disagreement with the majority.
Trademark law does not protect generic terms, meaning terms that do no more than name the product or service itself. This principle preserves the linguistic commons by preventing one producer from appropriating to its own exclusive use a term needed by others to describe their goods or services. Today, the Court holds that the addition of ".com" to an otherwise generic term, such as "booking," can yield a protectable trademark. Because I believe this result is inconsistent with trademark principles and sound trademark policy, I respectfully dissent.
I
A
Trademark law protects those " 'distinctive marks-words, names, symbols, and the like' " that " 'distinguish a particular artisan's goods from those of others.' " Matal v. Tam , 582 U. S. ----, ----, 137 S.Ct. 1744, 1751, 198 L.Ed.2d 366 (2017) (slip op., at 2) (quoting B&B Hardware, Inc. v. Hargis Industries, Inc. , 575 U.S. 138, 142, 135 S.Ct. 1293, 191 L.Ed.2d 222 (2015) ). To determine whether a given term is sufficiently distinctive to serve as a trademark, courts generally place it in one of five categories. The first four kinds of terms are eligible for federal trademark registration. The fifth is not.
I list the first three only to give context and allow comparisons. They are: (1) " 'fanciful' " terms, such as "Kodak" (film);
*2310 (2) " 'arbitrary' " terms, such as "Camel" (cigarettes); and (3) " 'suggestive' " terms, such as "Tide" (laundry detergent). Ante, at 2302 - 2303. These kinds of terms are " 'inherently distinctive.' " Ibid. The public can readily understand that they identify and distinguish the goods or services of one firm from those of all others. See Two Pesos, Inc. v. Taco Cabana, Inc. , 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). By preventing others from copying a distinctive mark, trademark law "protect[s] the ability of consumers to distinguish among competing producers" and "secure[s] to the owner of the mark the goodwill of his business." Park 'N Fly, Inc. v. Dollar Park & Fly, Inc. , 469 U.S. 189, 198, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). Ultimately, the purpose of trademark law is to "foster competition" and "suppor[t] the free flow of commerce." Matal , 582 U. S., at ----, 137 S.Ct., at 1751-1752 (internal quotation marks omitted).
This case concerns two further categories. There are "descriptive" terms, such as "Best Buy" (electronics) or "First National Bank" (banking services), that "immediately conve[y] information concerning a feature, quality, or characteristic" of the producer's goods or services. In re North Carolina Lottery , 866 F.3d 1363, 1367 (CA Fed. 2017). A descriptive term can be registered as a trademark only if it acquires "secondary meaning"-i.e., the public has come to associate it with a particular firm or its product. Two Pesos , 505 U.S. at 769, 112 S.Ct. 2753.
There are also "generic" terms, such as "wine" or "haircuts." They do nothing more than inform the consumer of the kind of product that the firm sells. We have called generic terms "descriptive of a class of goods." Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co. , 128 U.S. 598, 602, 9 S.Ct. 166, 32 L.Ed. 535 (1888). And we have said that they simply convey the "genus of which the particular product is a species." Park 'N Fly , 469 U.S. at 196, 105 S.Ct. 658. A generic term is not eligible for use as a trademark. That principle applies even if a particular generic term "ha[s] become identified with a first user" in the minds of the consuming public. CES Publishing Corp. v. St. Regis Publications, Inc. , 531 F.2d 11, 13 (CA2 1975) (Friendly, J.). The reason is simple. To hold otherwise "would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are." Ibid.
Courts have recognized that it is not always easy to distinguish generic from descriptive terms. See, e.g., Abercrombie & Fitch Co. v. Hunting World, Inc. , 537 F.2d 4, 9 (CA2 1976) (Friendly, J.). It is particularly difficult to do so when a firm wishes to string together two or more generic terms to create a compound term. Despite the generic nature of its component parts, the term as a whole is not necessarily generic. In such cases, courts must determine whether the combination of generic terms conveys some distinctive, source-identifying meaning that each term, individually, lacks. See 2 J. McCarthy, Trademarks and Unfair Competition § 12:39 (5th ed. June 2020 update) (McCarthy). If the meaning of the whole is no greater than the sum of its parts, then the compound is itself generic. See Princeton Vanguard, LLC v. Frito-Lay North Am., Inc. , 786 F.3d 960, 966-967 (CA Fed. 2015) ; In re Gould Paper Corp. , 834 F.2d 1017, 1018 (CA Fed. 1987) (registration is properly denied if "the separate words joined to form a compound have a meaning identical to the meaning common usage would ascribe to those words as a compound"); see also 2 McCarthy § 12:39 (collecting examples of compound terms held to be generic).
In Goodyear, 128 U.S. 598, 9 S.Ct. 166, 32 L.Ed. 535, we held that appending the *2311 word " 'Company' " to the generic name for a class of goods does not yield a protectable compound term. Id., at 602-603, 9 S.Ct. 166. The addition of a corporate designation, we explained, "only indicates that parties have formed an association or partnership to deal in such goods." Id., at 602, 9 S.Ct. 166. For instance, "parties united to produce or sell wine, or to raise cotton or grain," may well "style themselves Wine Company, Cotton Company, or Grain Company." Ibid. But they would not thereby gain the right to exclude others from the use of those terms "for the obvious reason that all persons have a right to deal in such articles, and to publish the fact to the world." Id., at 603, 9 S.Ct. 166. "[I]ncorporation of a company in the name of an article of commerce, without other specification," we concluded, does not "create any exclusive right to the use of the name." Ibid.
I cannot agree with respondent that the 1946 Lanham Act "repudiate[d] Goodyear and its ilk." Brief for Respondent 39. It is true that the Lanham Act altered the common law in certain important respects. Most significantly, it extended trademark protection to descriptive marks that have acquired secondary meaning. See Qualitex Co. v. Jacobson Products Co. , 514 U.S. 159, 171, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995). But it did not disturb the basic principle that generic terms are ineligible for trademark protection, and nothing in the Act suggests that Congress intended to overturn Goodyear . We normally assume that Congress did not overturn a common-law principle absent some indication to the contrary. See Astoria Fed. Sav. & Loan Assn. v. Solimino , 501 U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). I can find no such indication here. Perhaps that is why the lower courts, the Trademark Trial and Appeal Board (TTAB), the U. S. Patent and Trademark Office's (PTO) Trademark Manual of Examining Procedure (TMEP), and leading treatises all recognize Goodyear 's continued validity. See, e.g., In re Detroit Athletic Co. , 903 F.3d 1297, 1304 (CA Fed. 2018) ; In re Katch, LLC , 2019 WL 2560528, *10 (TTAB 2019); TMEP §§ 1209.03(d) (Oct. 2018); 2 McCarthy § 12:39 ; 4 L. Altman & M. Pollack, Callmann on Unfair Competition, Trademarks and Monopolies § 18:11 (4th ed., June 2020 update).
More fundamentally, the Goodyear principle is sound as a matter of law and logic. Goodyear recognized that designations such as "Company," "Corp.," and "Inc." merely indicate corporate form and therefore do nothing to distinguish one firm's goods or services from all others'. 128 U.S. at 602, 9 S.Ct. 166. It follows that the addition of such a corporate designation does not "magically transform a generic name for a product or service into a trademark, thereby giving a right to exclude others." 2 McCarthy § 12:39. In other words, where a compound term consists simply of a generic term plus a corporate designation, the whole is necessarily no greater than the sum of its parts.
B
This case requires us to apply these principles in the novel context of internet domain names. Respondent seeks to register a term, "Booking.com," that consists of a generic term, "booking" (known as the second-level domain) plus ".com" (known as the top-level domain). The question at issue here is whether a term that takes the form "generic.com" is generic in the ordinary course. In my view, appending ".com" to a generic term ordinarily yields no meaning beyond that of its constituent parts. Because the term "Booking.com" is just such an ordinary "generic.com" term, in my view, it is not eligible for trademark registration.
*2312 Like the corporate designations at issue in Goodyear , a top-level domain such as ".com" has no capacity to identify and distinguish the source of goods or services. It is merely a necessary component of any web address. See 1 McCarthy § 7:17.50. When combined with the generic name of a class of goods or services, ".com" conveys only that the owner operates a website related to such items. Just as "Wine Company" expresses the generic concept of a company that deals in wine, "wine.com" connotes only a website that does the same. The same is true of "Booking.com." The combination of "booking" and ".com" does not serve to "identify a particular characteristic or quality of some thing; it connotes the basic nature of that thing "-the hallmark of a generic term. Blinded Veterans Assn. v. Blinded Am. Veterans Foundation , 872 F.2d 1035, 1039 (CADC 1989) (Ginsburg, J. for the court) (emphasis added; internal quotation marks omitted).
When a website uses an inherently distinctive second-level domain, it is obvious that adding ".com" merely denotes a website associated with that term. Any reasonably well-informed consumer would understand that "post-it.com" is the website associated with Post-its. See Minnesota Min. & Mfg. Co. v. Taylor , 21 F.Supp.2d 1003, 1005 (Minn. 1998). Likewise, "plannedparenthood.com" is obviously just the website of Planned Parenthood. See Planned Parenthood Federation of Am., Inc. v. Bucci , 1997 WL 133313, *8 (SDNY, Mar. 24, 1997). Recognizing this feature of domain names, courts generally ignore the top-level domain when analyzing likelihood of confusion. See Brookfield Communications, Inc. v. West Coast Entertainment Corp. , 174 F.3d 1036, 1055 (CA9 1999).
Generic second-level domains are no different. The meaning conveyed by "Booking.com" is no more and no less than a website associated with its generic second-level domain, "booking." This will ordinarily be true of any generic term plus ".com" combination. The term as a whole is just as generic as its constituent parts. See 1 McCarthy § 7:17.50 ; 2 id ., § 12:39.50.
There may be exceptions to this rule in rare cases where the top-level domain interacts with the generic second-level domain in such a way as to produce meaning distinct from that of the terms taken individually. See ante, at 2305, n. 4. Likewise, the principles discussed above may apply differently to the newly expanded universe of top-level domains, such as ".guru," ".club," or ".vip," which may "conve[y] information concerning a feature, quality, or characteristic" of the website at issue. In re North Carolina Lottery , 866 F.3d at 1367 ; see also Brief for International Trademark Association as Amicus Curiae 10-11; TMEP § 1209.03(m). These scenarios are not presented here, as "Booking.com" conveys only a website associated with booking.
C
The majority believes that Goodyear is inapposite because of the nature of the domain name system. Because only one entity can hold the contractual rights to a particular domain name at a time, it contends, consumers may infer that a "generic.com" domain name refers to some specific entity. Ante , at 2305 - 2306.
That fact does not distinguish Goodyear . A generic term may suggest that it is associated with a specific entity. That does not render it nongeneric. For example, "Wine, Inc." implies the existence of a specific legal entity incorporated under the laws of some State. Likewise, consumers may perceive "The Wine Company" to refer to some specific company rather than a genus of companies. But the addition of the definite article "the" obviously does not *2313 transform the generic nature of that term. See In re The Computer Store, Inc. , 211 U.S.P.Q. 72, 74-75 (TTAB 1981). True, these terms do not carry the exclusivity of a domain name. But that functional exclusivity does not negate the principle animating Goodyear : Terms that merely convey the nature of the producer's business should remain free for all to use. See 128 U.S. at 603, 9 S.Ct. 166.
This case illustrates the difficulties inherent in the majority's fact-specific approach. The lower courts determined (as the majority highlights), that consumers do not use the term "Booking.com" to refer to the class of hotel reservation websites in ordinary speech. 915 F. 3d 171, 181-183 (CA4 2019) ; ante, at 2304 - 2305. True, few would call Travelocity a "Booking.com." Ibid. But literal use is not dispositive. See 915 F. 3d, at 182; H. Marvin Ginn Corp. v. International Assn. of Fire Chiefs, Inc. , 782 F.2d 987, 989-990 (CA Fed. 1986). Consumers do not use the term "Wine, Incs." to refer to purveyors of wine. Still, the term "Wine, Inc." is generic because it signifies only a company incorporated for that purpose. See Goodyear , 128 U.S. at 602-603, 9 S.Ct. 166. Similarly, "Booking, Inc." may not be trademarked because it signifies only a booking company. The result should be no different for "Booking.com," which signifies only a booking website.
More than that, many of the facts that the Court supposes may distinguish some "generic.com" marks as descriptive and some as generic are unlikely to vary from case to case. There will never be evidence that consumers literally refer to the relevant class of online merchants as "generic.coms." Nor are "generic.com" terms likely to appear in dictionaries. And the key fact that, in the majority's view, distinguishes this case from Goodyear -that only one entity can own the rights to a particular domain name at a time-is present in every "generic.com" case. See ante , at 2305 - 2306.
What, then, stands in the way of automatic trademark eligibility for every "generic.com" domain? Much of the time, that determination will turn primarily on survey evidence, just as it did in this case. See 915 F. 3d, at 183-184.
However, survey evidence has limited probative value in this context. Consumer surveys often test whether consumers associate a term with a single source. See 2 McCarthy § 12:14 - 12:16 (describing types of consumer surveys). But it is possible for a generic term to achieve such an association-either because that producer has enjoyed a period of exclusivity in the marketplace, e.g ., Kellogg Co. v. National Biscuit Co. , 305 U.S. 111, 118-119, 59 S.Ct. 109, 83 L.Ed. 73 (1938), or because it has invested money and effort in securing the public's identification, e.g ., Abercrombie , 537 F.2d at 9. Evidence of such an association, no matter how strong, does not negate the generic nature of the term. Ibid . For that reason, some courts and the TTAB have concluded that survey evidence is generally of little value in separating generic from descriptive terms. See Schwan's IP, LLC v. Kraft Pizza Co. , 460 F.3d 971, 975-976 (CA8 2006) ; Hunt Masters, Inc. v. Landry's Seafood Restaurant, Inc. , 240 F.3d 251, 254-255 (CA4 2001) ; A. J. Canfield Co. v. Honickman , 808 F.2d 291, 301-303 (CA3 1986) ; Miller Brewing Co. v. Jos. Schlitz Brewing Co. , 605 F.2d 990, 995 (CA7 1979) ; In re Hikari Sales USA, Inc. , 2019 WL 1453259, *13 (TTAB 2019). Although this is the minority viewpoint, see 2 McCarthy § 12:17.25, I nonetheless find it to be the more persuasive one.
Consider the survey evidence that respondent introduced below. Respondent's survey showed that 74.8% of participants thought that "Booking.com" is a brand *2314 name, whereas 23.8% believed it was a generic name. App. 66. At the same time, 33% believed that "Washingmachine.com"-which does not correspond to any company-is a brand, and 60.8% thought it was generic. Ibid.
What could possibly account for that difference? "Booking.com" is not inherently more descriptive than "Washingmachine.com" or any other "generic.com." The survey participants who identified "Booking.com" as a brand likely did so because they had heard of it, through advertising or otherwise. If someone were to start a company called "Washingmachine.com," it could likely secure a similar level of consumer identification by investing heavily in advertising. Would that somehow transform the nature of the term itself? Surely not. This hypothetical shows that respondent's survey tested consumers' association of "Booking.com" with a particular company, not anything about the term itself. But such association does not establish that a term is nongeneric. See Kellogg , 305 U.S. at 118-119, 59 S.Ct. 109 ; Abercrombie , 537 F.2d at 9.
Under the majority's approach, a "generic.com" mark's eligibility for trademark protection turns primarily on survey data, which, as I have explained, may be an unreliable indicator of genericness. As the leading treatise writer in this field has observed, this approach "[d]iscard[s] the predictable and clear line rule of the [PTO] and the Federal Circuit" in favor of "a nebulous and unpredictable zone of generic name and top level domain combinations that somehow become protectable marks when accompanied by favorable survey results." 1 McCarthy § 7:17.50. I would heed this criticism. In my view, a term that takes the form "generic.com" is not eligible for federal trademark registration, at least not ordinarily. There being no special circumstance here, I believe that "Booking.com" is a generic term not eligible for federal registration as a trademark.
II
In addition to the doctrinal concerns discussed above, granting trademark protection to "generic.com" marks threatens serious anticompetitive consequences in the online marketplace.
The owners of short, generic domain names enjoy all the advantages of doing business under a generic name. These advantages exist irrespective of the trademark laws. Generic names are easy to remember. Because they immediately convey the nature of the business, the owner needs to expend less effort and expense educating consumers. See Meystedt, What Is My URL Worth? Placing a Value on Premium Domain Names, 19 Valuation Strategies 10, 12 (2015) (Meystedt) (noting "ability to advertise a single URL and convey exactly what business a company operates"); cf. Folsom & Teply, Trademarked Generic Words, 89 Yale L. J. 1323, 1337-1338 (1980) (Folsom & Teply) (noting " 'free advertising' effect"). And a generic business name may create the impression that it is the most authoritative and trustworthy source of the particular good or service. See Meystedt 12 (noting that generic domain names inspire "[i]nstant trust and credibility" and "[a]uthority status in an industry"); cf. Folsom & Teply 1337, n. 79 (noting that consumers may believe that "no other product is the 'real thing' "). These advantages make it harder for distinctively named businesses to compete.
Owners of generic domain names enjoy additional competitive advantages unique to the internet-again, regardless of trademark protection. Most importantly, domain name ownership confers automatic exclusivity. Multiple brick-and-mortar companies could style themselves "The Wine Company," but there can be only one *2315 "wine.com." And unlike the trademark system, that exclusivity is world-wide.
Generic domains are also easier for consumers to find. A consumer who wants to buy wine online may perform a keyword search and be directed to "wine.com." Or he may simply type "wine.com" into his browser's address bar, expecting to find a website selling wine. See Meystedt 12 (noting "ability to rank higher on search engines" and "ability to use existing type-in traffic to generate additional sales"); see also 915 F. 3d, at 189 (Wynn, J., concurring in part and dissenting in part). The owner of a generic domain name enjoys these benefits not because of the quality of her products or the goodwill of her business, but because she was fortunate (or savvy) enough to be the first to appropriate a particularly valuable piece of online real estate.
Granting trademark protection to "generic.com" marks confers additional competitive benefits on their owners by allowing them to exclude others from using similar domain names. Federal registration would allow respondent to threaten trademark lawsuits against competitors using domains such as "Bookings.com," "eBooking.com," "Booker.com," or "Bookit.com." Respondent says that it would not do so. See Tr. of Oral Arg. 55-56. But other firms may prove less restrained.
Indeed, why would a firm want to register its domain name as a trademark unless it wished to extend its area of exclusivity beyond the domain name itself? The domain name system, after all, already ensures that competitors cannot appropriate a business's actual domain name. And unfair-competition law will often separately protect businesses from passing off and false advertising. See Genesee Brewing Co. v. Stroh Brewing Co. , 124 F.3d 137, 149 (CA2 1997) ; 2 McCarthy § 12:2.
Under the majority's reasoning, many businesses could obtain a trademark by adding ".com" to the generic name of their product (e.g. , pizza.com, flowers.com, and so forth). As the internet grows larger, as more and more firms use it to sell their products, the risk of anticompetitive consequences grows. Those consequences can nudge the economy in an anticompetitive direction. At the extreme, that direction points towards one firm per product, the opposite of the competitive multifirm marketplace that our basic economic laws seek to achieve.
Not to worry, the Court responds, infringement doctrines such as likelihood of confusion and fair use will restrict the scope of protection afforded to "generic.com" marks. Ante, at 2307 - 2308. This response will be cold comfort to competitors of "generic.com" brands. Owners of such marks may seek to extend the boundaries of their marks through litigation, and may, at times succeed. See, e.g. , Advertise.com v. AOL, LLC , 2010 WL 11507594 (CD Cal.) (owner of "Advertising.com" obtained preliminary injunction against competitor's use of "Advertise.com"), vacated in part, 616 F.3d 974 (CA9 2010). Even if ultimately unsuccessful, the threat of costly litigation will no doubt chill others from using variants on the registered mark and privilege established firms over new entrants to the market. See Brief for Electronic Frontier Foundation as Amicus Curiae 19-20.
* * *
In sum, the term "Booking.com" refers to an internet booking service, which is the generic product that respondent and its competitors sell. No more and no less. The same is true of "generic.com" terms more generally. By making such terms eligible for trademark protection, I fear that today's decision will lead to a proliferation of "generic.com" marks, granting their owners *2316 a monopoly over a zone of useful, easy-to-remember domains. This result would tend to inhibit, rather than to promote, free competition in online commerce. I respectfully dissent.