**CES PUBLISHING CORP.,**
**Plaintiff-Appellant-Cross-Appellee,**

v.

**ST. REGIS PUBLICATIONS, INC.**
**Defendant-Appellee-Cross-Appellant.**

Nos. 179, 211, Dockets 75–7269, 75–7276.

United States Court of Appeals,
Second Circuit.

Argued Dec. 1, 1975.
Decided Dec. 31, 1975.

Michael H. Rosenbloom, Washington, D. C. (Arthur Scheiner, Paul M. Ruden and Wilner & Scheiner, Washington, D. C., of counsel), for plaintiff-appellant-cross-appellee.

Patricia Hatry, New York City (Davis, Gilbert, Levine & Schwartz, New York City, of counsel), for defendant-appellee-cross-appellant.

Before LUMBARD, FRIENDLY and MULLIGAN, Circuit Judges.

FRIENDLY, Circuit Judge:

In this action between two New York corporations in the District Court for the Southern District of New York, plaintiff CES Publishing Corp. (CES) alleged that since December, 1972, it had published a magazine entitled "Consumer Electronics Monthly," which was distributed free of charge to manufacturers, distributors and dealers in the consumer electronics trade and which had generated substantial advertising revenues; that CES was privileged to use that title for its magazine by virtue of the registration of the trademark "Consumer Electronics" on the Supplemental Register of the Patent Office in 1967 by TV Digest, Inc., which had granted an exclusive license, now held by CES, to use the mark for a trade magazine to be entitled "Consumer Electronics Monthly"; that during the latter part of 1974 defendant announced its intention to publish a magazine, "Consumer Electronics Product News," also to be distributed free to the trade; and that this would violate CES' rights under the Lanham Act, 15 U.S.C. § 1051 et seq., and § 368–d of the New York General Business Law and the New York law of unfair competition. Later CES moved for a preliminary injunction.

Defendant filed an opposing affidavit. It recounted the following history: Defendant's interest in providing daily coverage to the semi-annual Consumer Electronics Show (a trade fair known to the industry as the "C.E.S." [1]) had been whetted by the discovery in 1971 that only one publication was doing this. This periodical, entitled "Consumer Electronics Show Daily," claimed trademark protection under the TV Digest registration. At first, therefore, defendant titled its publication simply "Trade News Daily," but this proved insufficient to identify the publication with the show. This impasse was bridged by defendant's coming to believe that the TV Digest trademark was invalid; thus defendant began in 1973 to cover the Show with a publication entitled "CES Trade News Daily," and was promptly met with a claim of trademark infringement by plaintiff and a change of the name of plaintiff's publication to "CES Daily." After the Consumer Electronics Show in June, 1974, defendant decided to expand its efforts by publishing a monthly magazine devoted to consumer electronics products. It settled on the title for this magazine as "Consumer Electronics Product News." Again there was a sole competitor in the field, namely, the plaintiff CES Publishing which, pursuant to its trademark, had been publishing a magazine entitled "Consumer Electronics Monthly." When defendant refused to honor plaintiff's demands that it cease using the words "Consumer Electronics," this suit followed.

Defendant's affidavit went on to call attention to a number of instances in which competing trade publications use the name of the industry, followed by another word

---

1. The Consumer Electronics Show was sponsored by the Consumer Electronics Products Division of the Electronic Industries Association, a non-profit trade association which has no business connection with CES Publishing.

identifying the particular journal.[2] It alleged further that other publications had used "Consumer Electronics" in their titles, that many companies had adopted these words in their corporate names or as titles for divisions, and that "The generic nature of 'consumer electronics' is further manifested in advertisements, personnel listings, news articles and other articles written about the industry . . ." Defendant also moved to dismiss under F.R.Civ.P. 12(b)(7) for failure to join TV Digest and Audio Times[3] as parties and under F.R. Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted. The basis of the latter branch of the motion was the generic nature of the words "Consumer Electronics." Plaintiff filed a reply affidavit alleging that the term had acquired a "secondary significance"; it also attached a letter showing TV Digest's approval of CES' bringing the action.

Judge Duffy found it unnecessary to pass upon the motion under Rule 12(b)(7) or another motion by defendant to delay decision pending determination of a proceeding it had brought in the Patent Office to cancel the plaintiff's trademark, since he found that the term "is not and cannot be such a distinctive term as to become a trademark nor does the proof at this point show that there has been a secondary meaning built up by the term to identify the plaintiff's publication with the words 'Consumer Electronics.'" He thought it clear that the term "as applied to a trade publication is merely a generic name and that as such it is not the subject of a valid trademark excluding others from the use of the words 'consumer electronics.'" Accordingly, he denied plaintiff's motion for a temporary injunction. However, he also denied defendant's motion "since the record is not clear as to the open questions of proof." Both parties have appealed.

The district court was right in holding the term "Consumer Electronics" to be generic and therefore in denying a temporary injunction, but wrong in believing that proof of secondary meaning might nevertheless entitle plaintiff to prevail under the Lanham Act. Although the Act does not explicitly say that a generic word cannot be validly registered even if there is proof of secondary meaning, this is the necessary implication from the contrast between § 14(c) and § 15(4) on the one hand, which provide that a registered mark may be cancelled at any time if it becomes "the common descriptive name of an article or substance," and that "No incontestable right shall be acquired in a mark which is the common descriptive name of any article or substance, patented or otherwise," and §§ 2(e), (f) and § 15 on the other, which permit registration of "merely descriptive" marks if they have "become distinctive of the applicant's goods in commerce" and allow such marks to achieve incontestability. The reason is plain enough. To allow trademark protection for generic terms, i. e., names which describe the genus of goods being sold, even when these have become identified with a first user, would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are. See *J. Kohnstam, Ltd. v. Louis Marx and Co.*, 280 F.2d 437, 440, 47 CCPA 1080 (1960); *Weiss Noodle Co. v. Golden Cracknel and Specialty Co.*, 290 F.2d 845, 48 CCPA 1004 (1961); *Application of Preformed Line Products Co.*, 323 F.2d 1007, 51 CCPA 775 (1963); *Application of G. D. Searle & Co.*, 360 F.2d 650, 53 CCPA 1192 (1966); *Application of Deister Concentrator Co.*, 289 F.2d 496, 503, 48 CCPA 952 (1961). All this is in accord with the common law. See discussion in *Delaware & Hudson Canal Co. v. Clark*, 80 U.S. (13 Wall.) 311, 323, 20 L.Ed. 581 (1872). The record makes plain that "consumer elec-

---

2. To take one example out of many, "Clinical Laboratory Digest," "Clinical Laboratory Guide," "Clinical Laboratory Products."

3. CES Publishing took its license from Audio Times, Inc. to which TV Digest, Inc. had initially granted a license. Audio Times, Inc. is an "affiliated company" of CES Publishing.

tronics" is a generic term describing electronic equipment[4] which consumers buy for installation by themselves. It is therefore clear that if plaintiff had applied the term to such goods, he could not successfully maintain a trademark action, see *In re Space-General Corp.,* 136 U.S.P.Q. 77 (T.T.A.B. 1962), even if he were the first in the field and consumers had come to identify his products with him.

█ It is equally clear that in determining whether the title of a periodical is a valid trademark, the same tests must be met as in the case of goods. *Application of Wings Pub. Co., Inc.,* 148 F.2d 214, 32 CCPA 926 (1945); *McGraw-Hill Pub. Co. v. American Aviation Assoc.,* 73 App.D.C. 131, 117 F.2d 293 (1940). Thus, to take a familiar example, before a satirical magazine whose title incorporates the word 'lampoon' may assert trademark rights in that title, a court must ask whether, to that public to whom the magazine is directed, the word 'lampoon' means a "satirical magazine." *National Lampoon, Inc. v. American Broadcasting Cos., Inc.,* 376 F.Supp. 733, 748–49 (S.D.N.Y.), aff'd mem. 497 F.2d 1343 (2 Cir. 1974). But although the same analysis of trademark terms applies to the titles of periodicals as to goods, our view may be obscured when the disputed title names a class of goods as well. This is often the case with magazines since, unlike most goods, whose appearance will convey their nature, periodicals must depend principally on their titles to convey their character. Courts have been reluctant to find a magazine title generic, perhaps in part because the magazines in such cases were not literally the class the title designated but were *about* that class; see *e. g., Collegiate World Pub. Co. v. DuPont Pub. Co.,* 14 F.2d 158 (N.D.Ill.1926), aff'd 25 F.2d 1018 (7 Cir. 1928), and *Photoplay Pub. Co. v. LaVerne Pub. Co.,* 269 F. 730 (3 Cir. 1921), in both of

which courts struck down trademarks as descriptive but did not find them generic, see also *McGraw-Hill Pub. Co., supra.* Cf. *Crime Confessions, Inc. v. Fawcett Pub., Inc.,* 139 F.2d 499, 31 CCPA 760 (1943). These decisions did not present, however, the case of the trade magazine, whose title may be a word which names not only the class of goods but a class of magazines devoted to displaying and discussing those goods. Such was the context in *Jenkins Pub. Co. v. Metalworking Pub. Co.,* 139 U.S.P.Q. 346 (T.T.A.B. 1963).[5] In *Jenkins,* a trade journal entitled "Metalworking" was distributed free to about 34,000 persons in various companies in the metalworking industries. In opposition to a cancellation proceeding, the publisher admitted that the term was the generally accepted name of an industry but contended that it was "merely descriptive"—having been originally registered on the Supplemental Register—and had since acquired secondary meaning as evidenced by its eventual registration on the Principal Register, and by its continuous monthly publication to a substantial readership for fourteen years. The Board recognized that "Metalworking" did not reveal the physical properties of the publisher's "goods." Nevertheless, the Board rejected any possibility of secondary meaning and held that the term was "incapable" of exclusive appropriation, since the magazine "Metalworking" was "devoted exclusively to advertisements and articles on metalworking equipment and supplies."

In the present case, plaintiff presents a paradigm for which generic classification of periodical titles is required: it is hard to think of a name for a magazine, directed deliberately and effectively to industry personnel, which more accurately names the class of trade magazines within that industry than one which simply gives itself the name of the trade plus the word "Monthly."

---

4. Consumer electronic products include, *inter alia,* television sets, radios, phonographs, tape recorders, electronic musical instruments, and calculators.

5. Previous litigation involving the same parties did not reach this issue since the second user

had failed to counterclaim for cancellation of the trademark on the grounds that it was generic and had been incorrectly granted, see *Metalworking Pub. Co. v. Jenkins Pub. Co.,* 130 U.S.P.Q. 371 (T.T.A.B. 1961), aff'd 315 F.2d 955, 50 CCPA 1218 (1963).

Here, one might intelligibly speak of both plaintiff's and defendant's magazines as "consumer electronics monthlies." It would be difficult indeed for other trade magazines to flourish and identify themselves to a relevant readership if they were forbidden to use the common name of the trade in their titles. There is no contention that defendant has attempted to simulate the format of plaintiff's magazine or engaged in other "predatory practices." *Norwich Pharmacal Co. v. Sterling Drug, Inc.,* 271 F.2d 569, 571 (2 Cir. 1959), *cert. denied,* 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960).

 While the court was thus correct in denying plaintiff's application for a temporary injunction because of the generic nature of its mark, it was in error in thinking that by proving secondary meaning plaintiff might save the day. This resulted from the common mistake of failing to distinguish between "merely descriptive" terms which can be rescued as trademarks by such proof and generic terms which cannot be. Cf. *Conde Nast. Pub., Inc. v. Vogue School of Fashion Modeling, Inc.,* 105 F.Supp. 325 (S.D.N.Y.1952). Since the claim under the Lanham Act was thus dismissible upon motion, the state law claims should likewise have been dismissed without prejudice. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Although we have no jurisdiction of defendant's cross-appeal since the denial of its motions to dismiss was not a final judgment, 28 U.S.C. § 1291, it has been clear since *Smith v. Vulcan Iron Works,* 165 U.S. 518, 17 S.Ct. 407, 41 L.Ed. 810 (1897), that, as stated in *Metropolitan Water Co. v. Kaw Valley Drainage District,* 223 U.S. 519, 523, 32 S.Ct. 246, 248, 56 L.Ed. 533 (1912), "on appeal from a mere interlocutory order, the circuit court of appeals might direct the bill to be dismissed if it appeared that the complainant was not entitled to maintain its suit." See also *Meccano, Ltd. v. John Wanamaker,* 253 U.S. 136, 140–41, 40 S.Ct. 463, 64 L.Ed. 822 (1920).

On plaintiff's appeal the order denying the temporary injunction is affirmed with instructions to the district court to dismiss the complaint with prejudice as to the federal claims and without prejudice as to the state claims. Defendant's cross-appeal is dismissed for want of jurisdiction. Defendant may recover its costs.