**REESE PUBLISHING COMPANY, INC., Plaintiff-Appellant,**

v.

**HAMPTON INTERNATIONAL COMMUNICATIONS, INC., David Berns, and Curtis Circulation Company, Defendants-Appellees.**

No. 696, Docket 79-7718.

United States Court of Appeals, Second Circuit.

Argued Feb. 4, 1980.

Decided March 12, 1980.

George B. Yankwitt, New York City (Robinson, Silverman, Pearce, Aronsohn & Berman, New York City, of counsel), for plaintiff-appellant.

Richard E. DePetris, Riverhead, N. Y. (Scheinberg, Wolf, DePetris, Pruzansky & Mahoney, Riverhead, N. Y., of counsel), for defendants-appellees.

Before LUMBARD, WATERMAN and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Reese Publishing Company, Inc. appeals from an order of the United States District Court for the Eastern District of New York, George C. Pratt, J., denying Reese's motion for injunctive relief and dismissing its complaint against defendants Hampton International Communications, Inc., its employee, David Berns, and its distributor, Curtis Circulation Company. The complaint stated various claims under both federal and state law, alleging primarily injury to plaintiff's asserted trademark "Video Buyer's Guide." Both plaintiff Reese and defendant Hampton publish magazines with similar titles aimed at the home market for television products. The district judge held that the mark "Video Buyer's Guide" is generic and therefore not entitled to trademark protection, and declined to consider the state law claims. Since we agree with the district judge's characterization of plaintiff's mark and find no error in any other respect, we affirm the judgment of the district court.

## I

At the time Reese filed its complaint in August 1979, its magazine had been in existence for a comparatively short time. Reese has published since November 1977 a quarterly magazine entitled "Video," which includes reports and advertising on home video products. Beginning at the same time, Reese has also published an annual Buyer's Guide to video products; the Guide for 1978 appeared in November 1977, and the Guide for 1979 appeared in November 1978. Reese sold approximately 18,440 copies of the 1978 Guide and 25,635 copies of the 1979 Guide. Shortly after the second annual Guide appeared, defendant David Berns became Reese's National Advertising Director. His employment was terminated some six months later.

A month after Berns left plaintiff Reese, he went to work for defendant Hampton, which previously had published a number of magazines relating to the consumer electronics industry. Not long thereafter, Hampton announced its intention to publish a magazine competing with plaintiff's publication, entitled the "1980 Official Video Buyer's Guide." This led to some inconclusive skirmishing between plaintiff and defendant, followed in August 1979 by the filing of plaintiff's complaint and its motion for preliminary injunctive and monetary relief. Since then, the first edition of Hampton's publication has been published under the title "Hampton's Official 1980 Video Buyer's Guide."

In the papers and during the hearing before Judge Pratt on the application for a preliminary injunction, the parties traded numerous charges. Reese claimed theft of trade secrets and unfair competition under state law, as well as violation of its rights in its trademark under federal law. Judge Pratt, however, focused only on the latter aspect of the case. In the course of his concise memorandum opinion, dated September 10, 1979, he concluded that

> The title "Video Buyer's Guide", as applied to a publication that reports on and promotes the sale of video products to consumers is a generic name. It describes the genus of the publication being sold. As such, it cannot be the subject of a valid trademark excluding others from using the words "Video Buyer's Guide".

Since "Video Buyer's Guide" was found to be generic and therefore not entitled to trademark protection, the judge found it unnecessary to reach Reese's factual claims of customer confusion. Similarly, because there was no valid federal claim, the judge declined to consider "the state law issues raised in the pleadings." The motion for injunctive relief was denied and the complaint was dismissed, "but without prejudice as to any state law claims." This appeal followed.

## II

Appellant Reese claims that the district court abused its discretion in denying an injunction because the finding that Reese's mark was generic was incorrect and because Reese otherwise satisfied the requirements for injunctive relief. Reese also argues that the district judge erred in failing to adjudicate the state law claims and in dismissing the complaint without giving Reese an adequate opportunity to present all of its evidence.

The question whether Reese's mark "Video Buyer's Guide" is generic is the basic issue in the case. There was a considerable amount of controversy in the district court, which continues before us, as to exactly what Reese called its publication. Thus, the parties differ as to whether the title was "Video" or "Video Buyer's Guide for the Home Video Enthusiast" or the "Annual Buyer's Guide" issue of Video, or "Home Video Hardware & Software Annual Buyer's Guide Video." There is a similar conflict as to how Hampton titled its publication, but we will put that to one side; in determining whether Reese's mark is generic, it does not matter what Hampton called its magazine. The district judge commendably grasped the nettle, assumed that Reese's mark is "Video Buyer's Guide" and ruled squarely on the issue whether it is generic. To the validity of that ruling, we now turn.

■ This court has engaged recently in an extensive analysis of the "basic principles of trademark law" that apply to this case. See *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). We there noted that there are four classes of terms to be considered in questions of trademark protection:

Arrayed in an ascending order which roughly reflects their eligibility to trademark status and the degree of protection accorded, these classes are (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful.

.　　.　　.　　.　　.

A generic term is one that refers, or has come to be understood as referring, to the genus of which the particular product is a species.

We also pointed out that neither at common law nor under the Lanham Act could generic terms become valid trademarks, since the first user cannot deprive manufacturers of the product of the right to call an article by its name. We noted, however, in a classic understatement, that the "lines of demarcation" between the four classes listed above "are not always bright."

In *Abercrombie & Fitch Co.*, supra, plaintiff Abercrombie claimed trademark protection for its registered mark "Safari" and attempted to enjoin the use of that term by a competitor, Hunting World, primarily on items of sporting apparel. We there pointed out:

It is common ground that A & F could not apply 'Safari' as a trademark for an expedition into the African wilderness. This would be a clear example of the use of 'Safari' as a generic term. What is perhaps less obvious is that a word may have more than one generic use. The word 'Safari' has become part of a family of generic terms which, although deriving no doubt from the original use of the word and reminiscent of its milieu, have come to be understood not as having to do with hunting in Africa, but as terms within the language referring to contemporary American fashion apparel. These terms name the components of the safari outfit well-known to the clothing industry and its customers　.　.　..

537 F.2d at 11. This analysis led to rejection of Abercrombie's complaint with regard to many of the uses of "Safari" by Hunting World. Most significantly for present purposes, we noted that

Describing a publication as a "Safariland Newsletter", containing bulletins as to safari activity in Africa, was clearly a generic use which is nonenjoinable, see *CES Publishing Co. v. St. Regis Publications, Inc.*

537 F.2d at 12.

In *CES Publishing Corp. v. St. Regis Publications, Inc.*, 531 F.2d 11 (2d Cir. 1975), decided only two weeks before *Abercrombie & Fitch*, the issue was remarkably similar to the one we now consider. There, plaintiff CES Publishing Corp. had registered the trademark "Consumer Electronics" and published a magazine entitled "Consumer Electronics Monthly." Defendant announced its intention to publish a magazine entitled "Consumer Electronics Product News." Plaintiff sought to enjoin use of "Consumer Electronics," claiming, as does plaintiff here, violation of its rights under federal and state law. We there concluded that "consumer electronics" is a generic term describing consumer electronic products and is the name of a trade or industry. We observed that

it is hard to think of a name for a magazine, directed deliberately and effectively to industry personnel, which more accurately names the class of trade magazines within that industry than one which simply gives itself the name of the trade plus the word "Monthly."

531 F.2d at 14.

■ The decisions in *Abercrombie & Fitch* and *CES Publishing Corp.* are controlling here. We believe that "video," like "consumer electronics," is a generic term describing a particular class of products and that the term is the name of a trade or industry. Therefore, if plaintiff sought trademark protection for "Video" as its magazine title, we think it would fail. Sim-

ilarly, use of the term "Buyer's Guide" on a magazine directed to consumers of a product is like the term "Newsletter" in *Abercrombie & Fitch.* And the combination of the two terms "Video" and "Buyer's Guide" does not, as Reese suggests, destroy their generic nature; if anything, it intensifies it in this context.[1] As in *CES Publishing Corp.,* "one might intelligibly speak of both plaintiff's and defendant's magazines" as video buyer's guides. Indeed, it is hard to think of a better way to describe them both, since "periodicals must depend principally on their titles to convey their character." If defendants were forbidden to use the phrase "video buyer's guide" in their title, it would be difficult for them "to flourish and identify themselves to a relevant readership." 531 F.2d at 14–15.

Appellant Reese seeks to distinguish *CES Publishing Corp.* on the ground that that case involved a "trade magazine" directed to industry personnel rather than a consumer publication like Reese's "Video Buyer's Guide." While it is true that the publication in *CES Publishing Corp.* was a "trade magazine," the rationale of that decision is equally applicable to a consumer publication whose title "names not only the class of goods [discussed therein] but a class of magazines devoted to displaying and discussing those goods." See 531 F.2d at 14. Like "Consumer Electronics Monthly," the publication in *CES Publishing Corp.,* "Video Buyer's Guide" names "a class of magazines devoted to displaying and discussing" the goods of a particular trade; that the former publication was aimed at "industry personnel," whereas the latter magazine is directed to consumers, is irrelevant. As we noted in *CES Publishing Corp.,* courts have been properly reluctant to find magazine titles generic in cases where the magazines "were not literally the class the title designated but were *about* that class." 531 F.2d at 14 (emphasis in original). But, contrariwise,

we will not hesitate to find the title of even a consumer publication generic if that title describes not only a class of goods but a class of magazines about those goods.

■ Appellant makes the further contention that there is no basis in the record for the lower court's conclusion that appellant's mark was generic. According to appellant, the defendants in this trademark infringement action had, but failed to carry, the burden of proving that appellant's title was generic. We disagree. If a mark has been registered with the United States Patent and Trademark Office, the defendants in an infringement action do bear the burden of overcoming the presumption that the mark is not generic. See, e. g., *McGregor-Doniger Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1132 (2d Cir. 1979); *Venetianaire Corp. of America v. A & P Import Co.,* 429 F.2d 1079, 1080 n. 1 (2d Cir. 1970); *E. I. DuPont de Nemours & Co. v. Yoshida Int'l, Inc.,* 393 F.Supp. 502, 523 n. 45 (E.D.N.Y.1975). But where, as here, the mark is not registered, this presumption of validity does not come into play. Instead, the burden is on plaintiff to prove that its mark is a valid trademark, see, e. g., *D C Comics, Inc. v. Powers,* 465 F.Supp. 843, 846 (S.D.N.Y.1978); 3 Callman, Unfair Competition Trademarks and Monopolies § 66.1 at 24, § 69 at 104–05 (3d ed. 1969); this necessarily implies that plaintiff must bear the burden of proving that its unregistered mark is not generic.

In any event, there was sufficient evidence in the record to support the district court's conclusion that Reese's mark was generic. Plaintiff's own affidavits in support of its motion for a preliminary injunction repeatedly use the term "video" in a generic sense to describe the class of consumer products discussed in its magazine. Similarly, the editions of plaintiff's publications submitted to the lower court are replete with generic uses of the term "video." There was also ample evidence before the

---

1. Appellant contends that the validity of its mark must be determined by looking at the mark as a whole, rather than by fragmenting "Video Buyer's Guide" into its various components. While it is generally true that a trademark should be considered as a whole, see 1

McCarthy, Trademarks and Unfair Competition § 11:10 at 364–66 (1973), the composite mark adopted by appellant here is generic even when read as a whole, for it names a whole class of magazines, i. e. video buyer's guides.

district court that "buyer's guide" was a generic phrase describing a class of publications designed to give consumers information about particular products. Appellees submitted evidence showing that a number of consumer electronics publications use the phrase "buyer's guide" or "buying guide" in their titles, frequently coupled with the name of the particular type of electronics product covered by the publication. Indeed, appellant's first edition of the magazine in question here used the term generically: the introduction to the magazine stated that it gave the reader "a complete buyer's guide" for a certain video product. On the basis of the evidence before him, the district judge was justified in finding the mark "Video Buyer's Guide" to be generic.

■ Appellant also contends that the district court improperly foreclosed it from presenting all of its evidence on the issue whether its mark is generic. The district court consolidated the trial on the merits with the hearing on appellant's motion for a preliminary injunction, a procedure specifically envisioned by Fed.R.Civ.P. 65(a)(2). According to appellant, however, the judge failed to give adequate notice of his intention to consolidate, and therefore appellant was deprived of a full opportunity to present its case. See, e. g., *Pughsley v. 3750 Lake Shore Drive Cooperative Building,* 463 F.2d 1055, 1057 (7th Cir. 1972) (parties should receive clear and unambiguous notice of consolidation); *Nationwide Amusements, Inc. v. Nattin,* 452 F.2d 651, 652 (5th Cir. 1971) (some form of notice necessary). We have reviewed the record, and we conclude that appellant was given adequate notice of the court's intention to consolidate, and that appellant was not prevented from presenting any relevant evidence because of the consolidation.

Rule 65(a)(2) permits a district court to order consolidation of trial on the merits

with a hearing on an application for a preliminary injunction "[b]efore or after the commencement of the hearing" on the application. Although at the hearing on the application here the court initially suggested that a further hearing would be necessary, as oral argument progressed the court repeatedly made clear its intention to consolidate unless there were any "material disputed issues of fact." At the close of appellees' argument the court inquired of appellees whether there was any reason why the case should not be given accelerated treatment; the court then directed the same question to appellant after it had been given an opportunity for further oral argument. The judge explicitly stated that he had "just had" the trial "unless there is some disputed question of fact"; counsel for appellant responded that "only the question of secondary meaning" remained to be resolved at trial, and that appellant had further evidence to present on that point.

■ Appellant now asserts that it was prejudiced because it was not given an opportunity to introduce this evidence of secondary meaning. But as we pointed out in *CES Publishing Corp.,* supra, 531 F.2d at 15, generic terms cannot be "rescued as trademarks" by proof of secondary meaning.[2] Indeed, we held in that case that the district court, which had denied a temporary injunction but had refused to dismiss the complaint, was "in error in thinking that by proving secondary meaning plaintiff might save the day," id.; accordingly, the order denying the injunction was affirmed with instructions to dismiss the complaint. Here, the district court properly dismissed the complaint upon concluding that appellant's mark was generic.

■ *CES Publishing Corp.* also disposes of appellant's final contention, which is that the district court erred by dismissing the

2. Appellant argues that evidence of secondary meaning would have been relevant to the issue whether its mark is generic because such evidence goes to the ultimate question of what the mark means to the consumer. But the evidence as to secondary meaning proffered by appellant at most could have established "de

facto secondary meaning," which cannot suffice to convert a generic term into a trademark. See, e. g., *J. Kohnstam, Ltd. v. Louis Marx & Co.,* 280 F.2d 437, 440, 47 CCPA 1080 (1960); 1 McCarthy, Trademarks and Unfair Competition §§ 12:14–:15 at 430–34 (1973).

state claims without prejudice, instead of adjudicating them. In *CES Publishing Corp.,* supra, 531 F.2d at 15, we held that since the Lanham Act claim in that case was dismissible upon motion, "the state law claims should likewise have been dismissed without prejudice." See *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Since the state claims were so disposed of here, there was no error.

The judgment of the district court is affirmed.