SportsChannel ASSOCIATES, Plaintiff,

v.

COMMISSIONER OF PATENTS AND TRADEMARKS, Defendant.

No. 93 CV 5356.

United States District Court,
E.D. New York.

Oct. 26, 1995.

Pennie & Edmonds, New York City (James W. Dabney, Kelly D. Talcott, of counsel), for Plaintiff.

Zachary Carter United States Attorney, Brooklyn, New York by Elliot M. Schachner, Gary R. Brown, Assistant United States Attorneys, Nancy Slutter, Assistant Solicitor, U.S. Patent and Trademark Office, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This action arises out of two service mark applications made by the plaintiff, SportsChannel Associates (the "plaintiff" or "SCA") to the United States Patent and Trademark Office ("PTO") (collectively referred to with the defendant Commissioner of Patent and Trademarks as the "defendant" or "Government") to register the name "SportsChannel" and its design or logo. The PTO rejected SCA's application to register the name and determined that it would accept an application for the logo, if registered subject to certain conditions. SCA did not refile the application for the logo, instead opting to file this lawsuit to compel the PTO to accept its applications.

*Background*

SCA is a New York corporation, with its main office in Woodbury, New York, owned by subsidiaries of Cablevision Systems Corporation ("CSC") and NBC Cable Holding, Inc. The plaintiff owns, in whole or in part,

several television stations which broadcast sporting events and related programming, made available to consumers primarily through cable television in various regions throughout the country.

On April 30, 1990, SCA applied to the PTO for registration of two service marks for "entertainment services in the nature of television programming and production services." The first application was for the term "SportsChannel," and the second was for the term "SportsChannel" and its associated logo.

Both applications were initially rejected by the Government on the basis that the term "SportsChannel" merely described the plaintiff's services. The plaintiff appealed to the Trademark Trial and Appeal Board of the PTO ("Appeal Board"), offering evidence to demonstrate that the term "SportsChannel" had acquired secondary meaning and was therefore protectable.

On September 30, 1993, the Appeal Board issued its decision rejecting the first application for registration of the term "SportsChannel" on the basis that it was generic, rather than descriptive, and therefore not entitled to protection regardless of secondary meaning. The Appeal Board however, granted the second application with the condition that the plaintiff file a disclaimer of rights to the term "SportsChannel" except as shown in the logo.

The plaintiff never filed the disclaimer, and instead commenced this action, seeking a declaration that it is entitled to register its applications with the PTO. The defendant now moves this Court for summary judgment in its favor on the ground that "SportsChannel" is a generic term not entitled to registration as a service mark as a matter of law. The plaintiff cross moves for partial summary judgment in its favor for an order entitling it to register its application for its production services.

*The Motion*

The issue to be decided on this motion is a narrow one: is the term "SportsChannel" a generic term, and therefore not entitled to registration as a service mark under any conditions?

*i. The Government's argument*

The defendant's motion has two prongs. First, the Government argues that the term "SportsChannel" is generic as a matter of law because the term essentially describes a category of television services, namely those channels that broadcast sports and sports related programming. Granting a service mark in this situation would be tantamount to condoning a monopoly, making it extremely difficult for other entities to enter the market and describe their services in a meaningful way.

In the second prong the Government argues that there is ample empirical evidence establishing that the term "SportsChannel" is generic. This argument is apparently an anticipated response to the plaintiff's claim that whether the term "SportsChannel" is descriptive or generic is a question of fact.

In support of this claim, the defendant has adduced evidence from a wide range of sources to demonstrate that the term "sports channel" is generic. For example, the Government conducted a NEXIS search enabling it to cite numerous instances where the term "sports channel" is used generically in a wide range of media outlets including newspapers, magazines, wire services, brochures and press releases issued by companies in the cable television industry, and also documents filed with the Securities and Exchange Commission.

Moreover, the Government points out several instances where the plaintiff and one of its parent corporations, CSC, has used the term "sports channel" generically. For example, in its July 1994 San Francisco survey to its subscribers, the plaintiff described one of its competitors, ESPN 2, as a "sports channel." On a different occasion, CSC used the term "sports channel" to refer to ten competitors in a written memorandum containing a proposal for a new sports network.

*ii. SCA's argument*

The plaintiff contends that the term "SportsChannel" is not generic, but rather descriptive, and as such may be registered under the Lanham Act, upon a showing of

secondary meaning. In support of its contention, SCA asserts that the issue of a term's status as generic or descriptive is a question of material fact sufficient to preclude summary judgment.

SCA's argument also consists of two prongs. First, SCA notes that it seeks a service mark for both its television programming and television production business. The plaintiff contends that while the Government has offered proof purporting to show that the term "SportsChannel" is generic with respect to the television *programming* business, the defendant has not offered any evidence with respect to the television *production* business. On this basis the plaintiff cross moved for partial summary judgment in its favor for an order directing the PTO to accept its application with respect to its production services.

The plaintiff's second argument is that the Government has failed to meet its burden of establishing that the term "SportsChannel" is generic. To establish this point, the plaintiff also sets forth a wide variety of sources, all of which demonstrate that the term "SportsChannel" is perceived as a trade name for a specific premium or expanded basic cable television service.

SCA's primary support for its contentions is a survey it commissioned, which was conducted in August 1994 by Alexander Simonson, Ph.D., presently a professor of marketing at Georgetown University in Washington, D.C. (the "Simonson Survey"). This survey was a random-digit dial telephone survey conducted in a defined twenty-nine county market area surrounding and including New York City. This area is commonly used in market research, and is referred to as the "New York Designated Market Area."

Each respondent to the Simonson Survey was first asked a series of qualifying questions to make sure that she or he met the parameters of the population of existing potential purchasers of cable television programming services. Those who met the criteria were then introduced to the concept of trade names and common names. If the respondent understood the difference, he or she was presented with nine names and asked if each was a trade name or a common name. One of the nine names was "SportsChannel."

The Simonson Survey indicated that 65.3% of the respondents perceived the term "SportsChannel" as a trade name, 24.3% perceived it as a common name, and 10.4% were unsure. SCA contends that the Simonson Survey is strong indication that the consuming public considers "SportsChannel" as being distinguished from its services, and accordingly, is not a generic term.

SCA also offers evidence of "acquired distinctiveness" to support its claim. SCA has been offering its services in the New York metropolitan area since 1976. From 1980 to 1994, SCA and its sister SportsChannel regional networks have invested over $87 million promoting the name "SportsChannel" in eight major American markets and produced revenues in excess of $1 billion. SportsChannel is currently received in more than 13 million households across the country.

SCA has also conducted its own NEXIS search of the term "SportsChannel," and found more than 12,600 references which use the term as a trade name referring specifically to SCA and its services. The plaintiff argues that the Government's NEXIS search for the term "sports channel" as opposed to "SportsChannel" retrieves only approximately 6,600 references, significantly less than the number of references to the SCA's trade name, and therefore misrepresents how the term is actually perceived by the public.

The plaintiff also offers proof of non-use of the term "SportsChannel" or "sports channel" by its competitors. SCA maintains that this evidence, which consists of competitors' printed advertisements which do not use the term "SportsChannel" or "sports channel" to describe their products or services, further demonstrates that SportsChannel is a valid trade name.

SCA also demonstrates that "SportsChannel" has already been acknowledged as a valid trademark by cable television operators nationwide. SCA has signed licensing agreements with several cable television operators under which the signatories acknowledge that "SportsChannel" is a valid trademark. Moreover, the plaintiff has been involved in

litigation in which the settlements include stipulations under which the signatories recognize SportsChannel as a valid mark. Among these stipulations were ones with Motorola, Inc., over that company's use of the term "Wireless Sports Channel," as a trademark for certain radio messaging services, and Midwest Cable & Satellite, Inc., which had registered the name "Midwest Sports Channel" as a service mark.

Finally, the plaintiff offers "extensive unsolicited correspondence" from consumers which demonstrates that the public perceives "SportsChannel" as a service mark, distinguishing SCA's product from its competitors'. The plaintiff maintains that this correspondence illustrates the public's understanding of SCA's proprietary interest in the term "SportsChannel" notwithstanding the fact that the term "sports channel" is sometimes used to describe such services.

*Discussion*

### 1. *Summary Judgment Standard*

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Terminate Control Corporation v. Horowitz,* 28 F.3d 1335, 1352 (2d Cir.1994) (quoting *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990)), and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Institute for Shipboard Education v. Cigna Worldwide Insurance Co.,* 22 F.3d 414, 418 (2d Cir.1994); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990).

Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)); *National Union Fire Ins. Co. v. Turtur,* 892

F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *Converse v. General Motors Corp.,* 893 F.2d 513, 514 (2d Cir.1990). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Lane v. New York State Electric & Gas Corp.,* 18 F.3d 172, 176 (2d Cir.1994); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Western World,* 922 F.2d at 121. Although the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment, Fed.R.Civ.P. 56(c) and (e) provide that the nonmoving party cannot rest on the pleadings but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *United States v. Rem,* 38 F.3d 634, 643 (2d Cir.1994).

Finally, when determining a motion for summary judgment, the Court is charged with the function of "issue finding", not "issue resolution." *Eye Assocs., P.C. v. IncomRx Sys. Ltd. Partnership,* 912 F.2d 23, 27 (2d Cir.1990).

With these principles in mind, the Court turns to the summary judgment motions in this case.

### 2. *Generic vs. descriptive status*

As a preliminary matter, the Court notes that service marks and trademarks are afforded the same protection under the Lanham Act. *See* 15 U.S.C. § 1053. Accordingly, the case law addressing trademarks is equally applicable to service marks.

In *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1039 (2d Cir. 1992), the Second Circuit joined its sister Circuits, holding that classification of a mark as generic, descriptive or otherwise is a ques-

tion of fact. *Id., citing, Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 292 n. 18 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991) ("The characterization of a mark is a factual issue"); *G. Heileman Brewing Co. v. Anheuser–Busch,* 873 F.2d 985, 992 (7th Cir.1989) ("The district court's classification of a term on the trademark spectrum is a factual determination...."); *Wiley v. American Greetings Corp.,* 762 F.2d 139, 141 (1st Cir.1985) ("Whether a design is 'inherently distinctive,' *i.e.,* whether it is arbitrary or merely descriptive, is ordinarily a question of fact."); *Anheuser–Busch v. Stroh Brewery Co.,* 750 F.2d 631, 635 (8th Cir.1984) ("[t]he categorization of a term for which trademark protection is claimed is considered a question of fact....").

A proposed service mark may fall into one of four judicially developed categories: (i) generic, (ii) descriptive, (iii) suggestive, or (iv) arbitrary and fanciful. *Bristol–Myers,* 973 F.2d at 1039, *citing, Abercrombie & Fitch Co. v. Hunting World,* 537 F.2d 4, 9 (2d Cir.1976). While analysis of these four categories is useful, establishing a valid trade mark or service mark ultimately depends on the proposed mark's "distinctiveness, or its origin-indicating quality in the eyes of the purchasing public." *Pirone v. MacMillan, Inc.,* 894 F.2d 579, 582 (2d Cir.1990).

Generic marks are those that "refer to the genus of which the particular product is a species," *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985), and entail the "common descriptive name of an article or substance," such as "aspirin," "thermos" or "trampoline." *Thompson Medical Co. v. Pfizer Inc.,* 753 F.2d 208, 212 n. 6 (2d Cir.1985). A generic term is not eligible for registration under the federal trademark statutes. *See Park 'N Fly,* 469 U.S. at 194, 105 S.Ct. at 661. The underlying policy is that allowing protection for a generic mark would effectively create a monopoly by preventing competitors from using a common word to describe the goods or services as what they are. *CES Publishing Corp. v. St. Regis Publications, Inc.,* 531 F.2d 11, 13 (2d Cir.1975). No amount of money poured into promoting generic terms with a particular source can justify depriving competitors of the right to call their service by its name. *PaperCutter, Inc. v. Fay's Drug Co., Inc.,* 900 F.2d 558, 562 (2d Cir.1990), *citing, Abercrombie & Fitch,* 537 F.2d at 9.

Descriptive marks are those that "describe the qualities, ingredients, effects or other features of the product naturally and in ordinary language." *Thompson Medical,* 753 F.2d at 212; *Abercrombie & Fitch,* 537 F.2d at 11. A mark can be descriptive in two ways. It can literally describe the product, or it can describe the purpose or utility of the product. *Bristol–Myers,* 973 F.2d at 1040 (internal quotations omitted). Surnames or personal names used are generally referred to as descriptive marks. *Pirone v. MacMillan, Inc.,* 894 F.2d at 583; *Abraham Zion Corp. v. Lebow,* 761 F.2d 93, 104 (2d Cir. 1985).

A suggestive mark, "requires imagination, thought and perception to reach a conclusion as to the nature of the goods" it represents. *Bristol–Myers,* 973 F.2d at 1040.

Arbitrary marks are those whose terms have a meaning, but not one that is usually associated with the product so designated. "Fanciful [marks] are those whose terms are 'coined,' having no independent meaning." *Lebow,* 761 F.2d at 104.

Because the intrinsic nature of suggestive, arbitrary and fanciful marks serves to identify a particular source of a product, these marks are deemed inherently distinctive and therefore entitled to protection. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 767–68, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992). In contrast, generic marks are never entitled to trademark protection, because they are by their nature non-distinctive.

For a descriptive mark to be entitled to protection, it must have acquired a public distinctiveness as to its source. This distinctiveness is commonly referred to as its "secondary meaning." *Id.* at 767–69, 112 S.Ct. at 2757–58; *Innovative Networks, Inc. v. Satellite Airlines Ticketing Ctrs., Inc.,* 871

F.Supp. 709, 723 (S.D.N.Y.1995). A mark acquires a secondary meaning where the primary significance of the product feature or term is to identify the source of the term rather than the term itself. *See Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 2187 n. 11, 72 L.Ed.2d 606 (1982); *Bristol–Myers,* 973 F.2d at 1040 (a term has acquired secondary meaning in its particular market when the "consuming public primarily associates the term with a particular source"); *Lebow,* 761 F.2d at 104, *citing Abercrombie & Fitch,* 537 F.2d at 10 (a term has acquired a secondary meaning when "the name and the business have become synonymous in the mind of the public, submerging the primary meaning of the term in favor of its meaning identifying the business"). The term need not be associated with the producer by all consumers. Rather, to establish secondary meaning, it is sufficient that a "substantial segment of the relevant group of consumers make the requisite association between the term and its proponent." *Centaur Communications v. A/S/M Communications,* 830 F.2d 1217, 1222 (2d Cir.1987).

### 3. *SCA's proposed service marks*

Applying these rules, the Court must now determine whether the term "SportsChannel" is generic, and therefore not entitled to protection under the Lanham Act, as a matter of law. The test for whether a term may be classified as generic is the meaning of that term to the consumers as it is commonly used. *See Magic Wand Inc. v. RDB Inc.,* 940 F.2d 638, 640–41 (Fed.Cir. 1991); *In re Northland Aluminum Prods. Inc.,* 777 F.2d 1556, 1559 (Fed.Cir.1985); *Anheuser–Busch, Inc. v. Stroh Brewery Co.,* 750 F.2d 631, 638–39 (8th Cir.1984); J. Thomas McCarthy, McCarthy On Trademarks and Unfair Competition, § 12.02[1] (3d ed. 1995) (*"McCarthy"*). The standard applied is the "primary" or "principal" significance the public has attached to the article. *See Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938) (recognizing the "primary significance" of the term as central to the inquiry); *King–Seeley Thermos Co. v. Aladdin Indus., Inc.,* 321 F.2d 577, 579 (2d Cir.1963) ("substantial ma-

jority" of the public understands the term "thermos" to be generic); *Feathercombs v. Solo Prods. Corp.,* 306 F.2d 251, 256 (2d Cir.), *cert. denied,* 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1962) (addressing the "principal significance" of the term); *Eastern Air Lines, Inc. v. New York Air Lines, Inc.,* 559 F.Supp. 1270, 1274 (S.D.N.Y.1983) (addressing "principal significance"); *E.I. DuPont de Nemours & Co. v. Yoshida Int'l, Inc.,* 393 F.Supp. 502, 523 (E.D.N.Y.1975) (same). These standards apply both in the context of cancellation of registered marks and applications for registration. *In re Merrill Lynch, Pierce, Fenner & Smith,* 828 F.2d 1567, 1569–70 (Fed.Cir.1987) (applying these standards to appellate review of the Appeal Board's refusal to register a service mark); *Northland Aluminum,* 777 F.2d at 1559 (same); *see also McCarthy,* at § 12.18[1].

Courts have accepted a variety of evidence to prove the generic nature of a mark, including competitors' use, *see E.I. DuPont, supra,* the plaintiff's use of the term, *Birtcher Electro Medical Systems, Inc. v. Beacon Laboratories, Inc.,* 738 F.Supp. 417 (D.Colo.1990), and customer surveys. *See American Thermos Prods. Co. v. Aladdin Indus., Inc.,* 207 F.Supp. 9 (D.Conn.1962), *aff'd,* 321 F.2d 577 (2d Cir.1963) (addressing the "Thermos Survey" which asks participants how they would identify a particular product given that it performs certain functions, in an effort to identify if the name of the product is generic); *E.I. DuPont, supra* (addressing a "Teflon Survey" in which participants are given a series of names and asked whether those names are brand names or common names, in an effort to discern how the public perceives each name).

In this case the Government essentially takes a common sense approach, arguing that the term "SportsChannel" is generic as a matter of law in that allowing SCA to monopolize the term "sports channel" would prevent competitors from adequately describing their own services. In support of its argument, the defendant relies primarily on three cases: *CES Publishing Corp. v. St. Regis Publications Inc.,* 531 F.2d 11 (2d Cir.1975); *Reese Publishing Co. v. Hampton Int'l Communications, Inc.,* 620 F.2d 7 (2d

Cir.1980); and *GMT Prods. L.P. v. Cablevision of New York City,* 816 F.Supp. 207 (S.D.N.Y.1993).

In *CES Publishing,* the plaintiff, publisher of a magazine entitled "Consumer Electronics Monthly," filed suit alleging that the defendant violated its trademark by publishing its own magazine entitled "Consumer Electronic Product News." *CES Publishing,* 531 F.2d at 12. The Second Circuit rejected the plaintiff's claim reasoning that the term "Consumer Electronics" was generic, and therefore not entitled to trademark protection, and the addition of the term "Monthly" did not affect the term's classification. In reaching its conclusion, the appellate court recognized that, "[i]t would be difficult ... for other trade magazines to flourish if they were forbidden to use the common name of the trade in their titles." *Id.* at 15. Indeed a person might "intelligibly speak of both plaintiff's and defendant's magazines as 'consumer electronics monthlies.'" *Id.*

Similarly, in *Reese* the publisher of a magazine entitled "Video Buyers Guide" brought suit for trademark infringement against a competing publisher of a magazine entitled "Hampton's Official 1980 Video Buyer's Guide." *Reese,* 620 F.2d at 9. The Second Circuit, finding *CES Publishing* controlling, affirmed the district court's dismissal of the claim after a hearing, finding the term "Video Buyers Guide" generic, reasoning that the terms "video" and "buyers guide" are both generic, and that combining the two does not modify their classification. *Id.* at 11, 12.

In *GMT Productions,* the case most factually analogous to the one at bar, the plaintiff, GMT, sought protection for its unregistered mark, "The Arabic Channel," against the defendant, Cablevision, claiming infringement of its mark in connection with the sale and advertising of its services. The defendant moved for summary judgment, arguing in part that the term "The Arabic Channel" was generic, and therefore unprotectable as a matter of law. The district court agreed, reasoning that GMT had failed to meet its burden as the owner of an unregistered mark of proving the validity of that mark. *GMT Productions,* 816 F.Supp. at 210–11. The court further held that "[t]he mark 'The Arabic Channel' describes a general category of services, namely, channels that broadcast in the Arabic language. It defines itself such that members of the public understand the nature of the product from the mark." *Id.* at 211. "In order not to severely weaken the ability of competitors to enter the market ... the mark 'The Arabic Channel' must remain in the public domain." *Id.* In reaching its conclusion, the court relied on two Appeal Board decisions in which the Appeal Board denied trademark protection to "The Weather Channel" and the "All News Channel" applying similar reasoning. *Id., citing, In re Weather Channel, Inc.,* 229 U.S.P.Q. 854 (1986); *In re Conus Communications Co.,* 23 U.S.P.Q.2d 1717 (1992).

■ SCA responds to this avalanche of very sound precedents by arguing that *Reese* and *CES Publishing* as well as the seminal case of *Abercrombie & Fitch* are inapposite as they were decided prior to the Trademark Clarification Act of 1984, 15 U.S.C. § 1064(3).' The Court disagrees. As the Government aptly points out in its reply brief, the purpose of the Trademark Clarification Act of 1984 was simply to codify the "primary significance" test discussed above, which was already incorporated into Second Circuit case law well before the statute's enactment. Sen.Rep. 98–627, Sept. 20, 1984. Accordingly, the Court finds that the holdings in *Reese, CES Publishing* and *Abercrombie & Fitch* are all valid and relevant to the determination of the case at issue.

The plaintiff also attempts to distinguish *GMT Productions* on its facts, pointing out that in *GMT* the district court was not provided with the record of "long and substantially continuous use" which is present in this case. The Court agrees, but for slightly different reasons. In *GMT,* the court was confronted with a case for infringement of an unregistered mark, which places the burden of proof on the plaintiff to establish the viability of the mark. In this case, the Court is faced with a suit against the PTO to declare that the plaintiff is entitled to register its mark. In this instance, under *Merrill Lynch, supra,* there may be a different burden of proof placed on the Government to establish that the mark is generic. More-

over, although the court in *GMT* did not expressly review the "primary significance" test for a term's classification as generic, it did rely on decisions applying that test. *GMT Productions*, 816 F.Supp. at 211, *citing Loctite Corp. v. National Starch & Chemical*, 516 F.Supp. 190, 199 (S.D.N.Y.1981) (recognizing that the test for whether a term is generic is the principal significance attached by the public). Therefore, while *GMT* is analogous to this case on its facts, a closer review reveals subtle implications. Accordingly, while *GMT* is relevant for its overall reasoning, it also implies that the Court must still apply the "primary significance" test, and it is distinguishable to the extent that it may have applied a different burden of proof.

In an effort to satisfy the primary significance test, the Government also provides a variety of examples of generic use of the term "SportsChannel." As discussed earlier, the Government points out that SCA, in its July 1994 San Francisco survey applied the term "sports channel" to one of its competitors, ESPN 2. CSC, one of SCA's parent corporations, has also used the term "sports channel" to refer to ten of its competitors in a memorandum addressing a plan to announce a new sports network. Moreover, the term "sports channel" has been used by unrelated entities in their promotional materials, such as the National Programming Service ("NPS"), which is engaged in the distribution of television programming. The plaintiff has also gone to great lengths to supply the Court with voluminous references to the term "sports channel" from a wide range of newspapers and magazines. Interestingly, the Government also points out several instances where the United States Senate and the Second Circuit have used the term "sports channel" generically. In one instance, the Senate even referred to one of SCA's competitors, ESPN, as a "sports channel."

SCA rejects the Government's submission of proof by supplying the Court with its own multivolume compendium of evidence demonstrating that the primary significance of the term "SportsChannel" to the general public is as a valid trade name. As discussed above, this evidence consists of the Simonson Survey, which demonstrated that 65.3% of those polled considered "SportsChannel" a trade name as opposed to 24.3% who perceived as a common name, with 10.4% unsure; a NEXIS search yielding over 12,600 references to the term "SportsChannel"; its $87 million in expenditures on advertising and promotions, with over $1 billion in revenue nationwide and a subscription list of over 13 million households; unsolicited consumer correspondence recognizing the term "SportsChannel" as an existing mark; and acknowledgements of validity by way of settlements and non-use by competitors.

Absent from either party's analysis is a review of *Thompson Medical Co., Inc. v. Pfizer Inc.*, 753 F.2d 208 (2d Cir.1985). In *Thompson*, the plaintiff, manufacturer of the topical analgesic, "Sportscreme," filed suit for a preliminary injunction against the defendant, manufacturer of a similar cream, "Ben–Gay SportsGel." The trial court issued an injunction in an oral decision from the bench after a two day hearing, declaring the case to be a "close one." *Id.* at 211. The Second Circuit then vacated the trial court's injunction because the trial judge failed to make any explicit finding that the mark was protectable.

As in *Thompson*, whether the Court is considering "Sportscreme" or "SportsChannel," there is a material triable issue of fact given the evidence supplied in this summary judgment motion. There are definite policy considerations militating in favor of granting summary judgment, such as preventing SCA from gaining an effective monopoly by preventing competitors from being able to describe their products. Indeed, the Court has a difficult time endorsing a decision that would, for example, allow the plaintiff to sue the owners of the Madison Square Garden sports station, which provides a similar service to SCA, if they began a hypothetical promotional campaign with the logo "Watch MSG, New York's number one sports channel."

Nevertheless, as discussed above, the test for classifying a term as generic is the primary significance of that term to the public. In an effort to satisfy this standard, the plaintiff has done a yeoman job of producing

evidence that tends to establish that the public regards the term "SportsChannel" as a trade name. While it is true, that the Government has offered its own countervailing evidence, this proof serves to demonstrate that an issue of material fact exists as to how public truly perceives the term "SportsChannel."

Accordingly, because the Court finds that a genuine issue of material fact as to whether the term SportsChannel is generic, and therefore entitled to no protection, or descriptive, and therefore entitled to service mark protection upon a showing of secondary meaning, see *Bristol–Myers, supra,* the Government's motion for summary judgment is denied and this case is referred to United States Magistrate Judge Michael L. Orenstein upon the consent of the parties pursuant to 28 U.S.C. § 636(c).

■ SCA has also cross moved for summary judgment arguing that is entitled to register its mark with respect to its *production* services as opposed to its *programming* services. SCA originally attempted to register its mark for both services together in each application for the mark and the logo. The plaintiff now argues that because the government has only made arguments as to the generic nature of its *programming* services, without addressing its production business, partial summary judgment should be granted in its favor ordering the Government to accept its application with respect to the its television *production* services.

The Government responds that SCA's argument should be rejected for two reasons. *First,* this contention contradicts SCA's earlier representations made throughout this lawsuit. *Second,* because the term at issue is generic with respect to the television programming portion of its applications, the rest of those applications must be necessarily denied. *See Application of Richardson Ink Co.,* 511 F.2d 559, 561 (CCPA 1975). This second argument however, is obviated by the Court's decision that a hearing must be held as to whether the term "Sportschannel" is generic with respect to the entire application.

With regard to the first argument, the Court is unable to determine conclusively whether SCA is now taking a position entirely inconsistent with its prior arguments and if it did whether it is barred from doing so. Its applications refer to its programming and production services collectively as does the Complaint. However, in its deposition, SCA did make some specific inquiries into how the government was planning to demonstrate that the term "SportsChannel" was generic with respect to just its production services. Accordingly, there is a question of material fact as to the effect of the alleged change in position by the plaintiff.

■ The plaintiff also makes a further argument that it is entitled to register its "SportsChannel" mark for its programming and production services because it has been allowed to register the same mark with respect to other services such as providing advertising for others and television guides. The Court disagrees. As the Government correctly points out, a mark may be protectable for some goods, but not for others. *See Abercrombie & Fitch,* 537 F.2d at 13 (recognizing that the term "Safari" may be generic and therefore unprotectable when referring to African expeditions but may be a trademark when referring to suburban clothing). Accordingly, SCA's cross motion for partial summary judgment is denied with leave to reargue these issues in the hearing before Magistrate Judge Orenstein upon the consent of the parties.

*Conclusion*

Based on the oral argument between the parties, and the papers submitted to the Court, it is hereby

ORDERED, that the defendant's motion for summary judgment is denied, the Court having found a genuine issue of material fact as to whether the term "SportsChannel" is eligible for protection as a service mark; and it is further

ORDERED, that the plaintiff's cross motion for partial summary judgment is denied, the Court having found a genuine issue of material fact as to whether SCA is entitled to a service mark for its television production services; and it is further

ORDERED, that based on the consent of the parties during a telephone conference call, this case is reassigned to United States Magistrate Judge Michael L. Orenstein pursuant to 28 U.S.C. § 636(c) for all purposes.

SO ORDERED.